9/2/2020                                                                                                        1

## SUMMONS ON COMPLAINT

### UNION COUNTY COMMON PLEAS COURT
### 215 WEST 5TH STREET
### MARYSVILLE, OH 43040

| Geeta Hospitality Inc dba Hampton Inn Marysville | vs. | Dependable Quality Construction LLC , ET AL | 20CV0122 |
| --- | --- | --- | --- |

**Geeta Hospitality Inc dba Hampton Inn Marysville**
**16610 SQUARE DRIVE**
**MARYSVILLE, OH 43040**

PLAINTIFF

To: **Amguard Insurance Company**
**PO BOX 1368**
**WILKES-BARRE, PA 18703**

DEFENDANT

To the following named defendant(s):

**Dependable Quality Construction LLC**
**Valeriy Oleynik**
**Liliya Oleynik**
**Amguard Insurance Company**
**Remco Insurance Services Inc**

You have been named defendant(s) in a complaint filed in:
Union County Court of Common Pleas
215 West 5th Street
Marysville, OH 43040

By: **Geeta Hospitality Inc dba Hampton Inn Marysville**

| Attorney: Scott A Fenton | 68097 |
| --- | --- |
| TWO MIRANOVA PLACE | |
| SUITE 220 | |
| COLUMBUS, OH 43215 | |

plaintiff(s). A copy of the complaint is attached.

# EXHIBIT A

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

You are hereby summoned and required to serve upon the plaintiff's attorney (or upon the plaintiff, if he has no attorney of record) a copy of an answer to the complaint within twenty-eight days after service of this summons on you, exclusive of the day of service.  A copy of your answer must also be filed with the Court within three days of your serving your answer upon the plaintiff or upon the plaintiff's attorney.

If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded.


**DATE: September 2, 2020**

**Teresa L. Nickle** - Clerk of Courts


By _____ , Deputy Clerk

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM


I HEREBY CERTIFY THIS TO BE
A TRUE COPY OF THE ORIGINAL
FILED IN THIS OFFICE
CLERK OF COURTS
UNION COUNTY, MARYSVILLE OHIO

**IN THE COMMON PLEAS COURT OF UNION COUNTY, OHIO**

2020 AUG 31 PM 1:56
FILED CLERK OF COURTS
COURT OF COMMON PLEAS
UNION COUNTY, OHIO

GEETA HOSPITALITY INC.
dba Hampton Inn Marysville
16610 Square Drive
Marysville, OH 43040,

     Plaintiff,

     -vs-

DEPENDABLE QUALITY
CONSTRUCTION, LLC
c/o Valeriy Oleynik, Statutory Agent
416 Hoyt Court
Inman, SC 29349,

     -and-

VALERIY OLEYNIK
416 Hoyt Court
Inman, SC 29349,

     -and-

LILIYA OLEYNIK
416 Hoyt Court
Inman, SC 29349,

     -and-

AMGUARD INSURANCE COMPANY
P.O. Box 1368
Wilkes-Barre, PA 18703-1368,

     -and-

REMCO INSURANCE SERVICES, INC.
80 Second Street
Pike-Suite No. 8
South Hampton, PA 18965,

     Defendants.

Case No. 2 0 C V 0 1 2 2

Judge

Jury Demand Endorsed Hereon

<u>COMPLAINT</u>

1

Now comes Plaintiff Geeta Hospitality Inc. dba Hampton Inn Marysville for its Complaint against Defendants Dependable Quality Construction, LLC, AmGuard Insurance Company and Remco Insurance Services, Inc., and alleges and avers as follows:

### Facts Common to All Claims

1. Plaintiff Geeta Hospitality Inc. is the owner and operator of the Hampton Inn Marysville ("Plaintiff"), located at 16610 Square Drive, Marysville, Ohio 43040.

2. Defendant Dependable Quality Construction, LLC ("Contractor") maintains a principal place of business located at 416 Hoyt Court, Inman, South Carolina 29349.

3. The Contractor is a general contractor who markets itself as being a national company with "core competencies" which include hotel renovation and improvement projects.

4. Defendant Valeriy Oleynik and Liliya Oleynik are married and reside at at 416 Hoyt Court, Inman, South Carolina 29349.

5. Upon information and belief, Valeriy and Liliya Oleynik (collectively "the Oleyniks") are the Contractor's sole members and owners.

6. Defendant Remco Insurance Services Inc. ("Broker") is an insurance broker with a principal place of business located at 80 Second Street Pike, Suite 8, Southhampton, PA 18966.

7. Upon information and belief, during 2018, Remco assisted the Oleyniks and Contractor in obtaining a Commercial General Liability Policy (#DEBP990342)

2

from AmGuard Insurance Group ("Insurer") who has a principal place of business located at P.O. Box 1368, Wilkes-Barre, PA 18703-1368.

8. On or about May 17, 2018, the Plaintiff entered into a Renovation Agreement ("Agreement") with Contractor, A true and accurate copy of the Renovation Agreement is attached hereto as **Exhibit A.**

9. The Contractor's scope of services under the Agreement included replacement of the existing metal roof with a new EPDM rubber roof.

10. The Agreement also required the Contractor to be "responsible at all times for safeguarding and securing the Premises against accidents or injury." Agreement § 7.08.

11. As a precondition to the Agreement, the Contractor was required to obtain a commercial general liability ("CGL") policy which named Plaintiff as an additional insured or certificate holder on this policy.

12. On or about May 14, 2018, the Contractor provided Plaintiff with a Certificate of Liability Insurance which identified Plaintiff as a Certificate Holder or additional insured under the Contractor's CGL policy (Policy No. DEBP990342) issued by AmGuard Insurance Company ("AmGuard").  A true and accurate copy of the Certificate of Liability Insurance is attached hereto as **Exhibit B**.

13. Remco, as agent for AmGuard, prepared and issued the Certificate of Liability Insurance which named Plaintiff, a commercial entity, as a "Certificate Holder" on the AmGuard policy.

14. Plaintiff detrimentally relied on the Certificate of Liability Insurance by signing the Agreement.  But for the Certificate of Liability Insurance identifying the

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

3

Plaintiff as a "Certificate Holder" under the CGL policy issued by AmGuard, Plaintiff would not have entered into the Agreement with the Contractor.

15. In September of 2018, the Contractor commenced construction on the renovation project.

16. Soon after the existing roof was removed, a rainstorm occurred, catching the Contractor completely unprepared to cover and protect the building from the storm resulting in significant water intrusion damage to the interior of the hotel, including but not limited to damage to the ceilings, walls, carpet, furniture and other interior finishes.

17. Plaintiff has paid over $500,000 to remediate the water damage, repair the building and replace damaged interior furniture and finishes.

18. On or about September 18, 2018, Plaintiff, through its agent, submitted a Notice of Claim/Proof of Loss to AmGuard for the damage, which was acknowledged by AmGuard on or about September 19, 2019. **Exhibit C.**

19. AmGuard was extremely dilatory in responding to the Plaintiff's claim.

20. Plaintiff contacted AmGuard numerous times during the balance of 2018 and 2019, without receiving any response from AmGuard.

21. On or about July 29, 2019, Plaintiff sent a certified letter to AmGuard demanding action on its claim. A true and accurate copy of the certified letter is attached hereto as **Exhibit D**.

22. After no action was received, Plaintiff filed a written complaint with the Ohio Department of Insurance in August of 2019. It was this complaint that finally

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

triggered a response by AmGuard on October 7, 2019, denying Plaintiff's claim.

**Exhibit E.**

23. To date, Plaintiff has been forced to pay more than $500,000 to mitigate the water damage and to repair and replace interior finishes.

### CLAIM ONE – Breach of Contract by Dependable Quality Construction

24. Plaintiff herein incorporates by reference the preceding paragraphs as if fully rewritten herein.

25. Plaintiff fully complied with all of its duties and obligations under the Agreement.

26. The Contractor breached the Agreement by:

    A. Failing to perform its construction services in a workmanlike manner resulting in significant water intrusion damage to Plaintiff's hotel;

    B. Refusing Plaintiff's numerous requests to repair the water intrusion damage caused by its neglect; and

    C. Alternatively, in the event the Court finds no coverage under the CGL policy, failing to procure proper CGL coverage during the renovation project with the limit identified in the Certificate of Liability Coverage; and

    D. Failing to make sure Plaintiff was added as an additional insured on the Contractor's CGL Policy.

27. As a proximate result of Contractor's breach of contract, Plaintiff has suffered damages in excess of $500,000.

### CLAIM TWO – Fraud by Dependable Quality Construction, Valeriy and Liliya Olenik

28. Plaintiff herein incorporates by reference the preceding paragraphs as if fully rewritten herein.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

5

29. Defendants Valeriy and Liliya Olenik incorporated the Contractor in 2017 and are its sole owners and operators.

30. The Oleniks own a single family home, located at 416 Hoyt Court, S.C., 29349, from which they operate the Contractor's business.

31. Valeriy Oleynik, while negotiating the Renovation Agreement **(Exhibit A)** on behalf of Contractor, falsely represented that it had obtained the CGL policy with limits of $2,000,000. **(Exhibit B)**

32. Plaintiff detrimentally relied upon Oleynik's representations by agreeing to enter into the Agreement.

33. Upon information and belief, Oleynik knew or should have known that the Contractor had obtained the CGL Policy (# DEBP990342) by fraudulent means and/or that the Contractor was not entitled to coverage under the CGL Policy.

34. Upon information or belief, Valeriy and Liliya Oleynik both conspired and/or acted in concert and participated in obtaining the CGL Policy by fraudulent means. Specifically, the Oleynik's knowingly misrepresented in their AmGaurd insurance application that the Contractor (1) did not perform any roofing work; (2) only performed residential work; and (3) performed no commercial work. **(Exhibit F)**.

35. The Oleyniks did not inform Plaintiff that they knowingly provided false and misleading information in order to procure the CGL Policy.

36. Had Plaintiff known that the Oleyniks had obtained the CGL Policy by fraudulent means, Plaintiff would not have entered into the Renovation Agreement.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

37. The Contractor's corporate veil should be pierced because during all times relevant to this case:

    a. the Oleyniks exercised such complete control over their corporation that the Contractor lacked a separate mind, will or existence of its own;

    b. the Oleyniks' control over the corporation was exercised in such a manner as to commit fraud against the Plaintiff;

    c. as a proximate result of the Oleyniks' fraud, Plaintiff was led to wrongfully believe that the Contractor had properly procured a CGL policy for the project;

    d. The Oleyniks' fraud has proximately caused Plaintiff to sustain damages in excess of $500,000, plus attorneys' fees.

    e. In addition to piercing the Contractor's corporate veil, Plaintiff demands damages, jointly and severally, against the Contractor and Valeriy and Liliya Oleynik in excess of $500,000, plus recovery of Plaintiff's reasonable attorneys' fees and litigation costs, punitive damages and prejudgment and post judgment interest.

## CLAIM THREE - Breach of Contract by AmGuard

38. Plaintiff herein incorporates by reference the preceding paragraphs as if fully rewritten herein.

39. Upon information and belief, Plaintiff was a "Certificate Holder" or additional insured under the Contractor's CGL Policy (No. DEGP 990342) issued by AmGuard.

40. Alternatively, Plaintiff was an intended third-party beneficiary under the Contractor's CGL policy (No. DEBP990342) issued by AmGuard.

41. AmGuard breached the CGL Policy by failing to timely respond to Plaintiff's Notice of Claim/Proof of Loss submitted to AmGuard.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

42. AmGuard did not respond to Plaintiff's claim until it was forced to act after Plaintiff filed a complaint against AmGuard with the Ohio Department of Insurance.

43. AmGuard breached its Agreement with Plaintiff by failing to pay for the damage resulting from the rainstorm, which includes significant consequential damages to the hotel.

44. As a proximate result of AmGuard's breach of contract, Plaintiff has suffered damages in an amount in excess of $500,000, plus prejudgment and post judgment interest.

## CLAIM FOUR - Bad Faith by AmGuard

45. Plaintiff herein incorporates by reference the preceding paragraphs as if fully rewritten herein.

46. As a condition of the Agreement, Contractor was required to procure a CGL policy with coverage limits of not less than $2,000,000.

47. Contractor had a duty to make sure that Plaintiff was identified as an additional insured or certificate holder under the Agreement.

48. On or about May 14, 2018, AmGuard's agent Remco issued a Certificate of Liability Insurance identifying Plaintiff as a "Certificate Holder" under AmGuard's policy (#DEBP990342).

49. In 2018 soon after the damage to the hotel occurred, Plaintiff submitted a Proof of Claim to AmGuard for the damage caused by Contractor's breach of contract and negligence.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

50. AmGuard, however, did not respond to Plaintiff's Proof of Claim until it was forced into responding to the complaint that Plaintiff filed with the Ohio Department of Insurance.

51. AmGuard's October 7, 2019 denial letter was issued almost a year after Plaintiff filed its Notice of Claim/Proof of Loss.

52. In September of 2018, Plaintiff submitted a Notice of Claim/Proof of Loss for the damage caused by AmGuard's insured, Contractor.

53. AmGuard failed to timely respond to this Notice of Claim/Proof of Loss.

54. It was not until Plaintiff filed a Complaint with the Ohio Department of Insurance that AmGuard finally issued a denial of Plaintiff's claim on or about October 7, 2019.

55. AmGuard owed a duty to exercise good faith in processing Plaintiff's first-party claim.

56. AmGuard's failure to provide a timely coverage determination is not reasonably justified.

57. As a direct and proximate result of the bad faith actions by AmGuard, Plaintiff was required to spend over $500,000 of its own funds to repair the building and, on top of that, hire legal counsel to file this action.

58. AmGuard's actions constitute bad faith and justify an award of compensatory and punitive damages, as well as attorneys' fees and the costs and expenses of this litigation.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

## CLAIM FIVE – Professional Negligence Against
## Remco Insurance Services

59. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully rewritten herein.

60. Upon information and belief, Defendant Remco Insurance Services assisted Defendants Valerily and Liliya Oleynik to prepare and submit their application to AmGuard for the CGL Policy for the Contractor.

61. Upon information and belief, Remco knew or should have known that the Contractor performed both commercial and roofing work, as well as commercial roofing work at the time the Oleyniks applied for their CGL Policy.

62. Upon information and belief, Remco knew or should have known that the Oleyniks provided false and misleading information on their insurance application.

63. Upon information and belief, Remco provided a Certificate of Liability Insurance, attached hereto as **Exhibit B.**

64. The Certificate of Liability Insurance states that a CGL policy in the amount of $2,000,000 was issued to the Contractor (Policy No. DEBP990342) which also made Plaintiff a "Certificate Holder" or additional insured under the policy.

65. Plaintiff detrimentally relied on the Certificate of Liability Insurance by signing the Agreement. But for the Certificate of Liability Insurance identifying Plaintiff as a "Certificate Holder" under the CGL Policy issued by AmGuard, Plaintiff would not have entered into the Agreement with the Contractor.

66. After Plaintiff submitted a Notice of Claim/Proof of Loss in September of 2019, AmGuard eventually denied the claim.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

10

67. Upon information and belief, one of the reasons that AmGuard gave for denying the claims of Contractor and Plaintiff is that the CGL policy did not provide coverage for **commercial** roofing work, even though the Hampton Inn renovation project was clearly a commercial project and both the Contractor and Plaintiff are incorporated parties engaged in commercial activity.

68. Remco was negligent and breached its standard of care by providing a Certificate of Liability Insurance purporting to make Plaintiff a certificate holder under the policy issued by AmGuard.

69. Remco knew or should have known that the Oleyniks obtained the CGL Policy by providing false and misleading statements on the application they submitted to AmGuard.

70. Remco knew or should have known that Plaintiff would detrimentally rely upon the Certificate of Liability Insurance in its decision to contract with Contractor and allow it to perform commercial roofing work during The Project.

71. As a proximate result of Remco's negligence, Plaintiff has incurred damages in excess of $500,000 to repair the property, plus attorneys' fees and litigation expenses to pursue this matter.

### CLAIM SIX – Negligent Misrepresentation Against<br>Remco Insurance Services

72. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully rewritten herein.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

73. Upon information and belief, the Contractor advised Remco that it desired to enter into the Agreement to renovate Plaintiff's hotel, which included replacement of the roof.

74. Upon information and belief, the Contractor further advised Remco that as a precondition to the Agreement, Plaintiff had to be added as an additional insured on the Contractor's CGL policy during the project.

75. Upon information and belief, the Contractor requested that Remco prepare a Certificate of Liability Insurance identifying Plaintiff as a Certificate Holder of the Contractor's CGL policy issued by AmGuard.

76. Remco issued a Certificate of Liability Insurance falsely representing that the Contractor's CGL policy covered commercial renovation projects and that Plaintiff was a "Certificate Holder" or named insured under the Contractor's CGL policy.

77. Remco knew or should have known that the CGL Policy was obtained as a result of the Oleyniks' and Contractor's false and misleading statements contained on the Contractor's insurance application.

78. Remco knew or should have known that Plaintiff would justifiably and detrimentally rely upon being identified as a Certificate Holder in the Certificate of Liability Insurance.

79. Remco negligently misrepresented that the Contractor's CGL policy applied to commercial roofing projects and that Plaintiff was a Certificate Holder under the Contractor's CGL policy.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

80. Remco's negligent misrepresentations have proximately caused Plaintiff to incur damages in excess of $500,000.

**CLAIM SEVEN - Declaratory Judgment Against Defendants, R.C. 2721.02**

81. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully rewritten herein.

82. Pursuant to R.C. 2721.02, Plaintiff asks the Court for a declaratory judgment as stated in Paragraphs 81-103.

83. The Contractor is a commercial entity who markets itself as being a national company specializing in general construction, including hotel projects.

84. That Defendants Valeriy and Liliya Oleynik are the sole shareholders of the Dependable Quality Construction LLC.

85. Upon information or belief, Valeriy and Liliya Oleynik both conspired an/or acted in concert and participated in obtaining the CGL Policy by fraudulent means. Specifically, the Oleyniks knowingly misrepresented represented in their AmGaurd insurance application that the Contractor (1) did not perform any roofing work; (2) only performed residential work; and (3) performed no commercial work. **(Exhibit F)**.

86. The Oleyniks did not inform Plaintiff that they knowingly provided false and misleading information in order to procure the CGL Policy.

87. As a precondition to the Renovation Agreement **(Exhibit A)**, Contractor was required to obtain a CGL policy naming Plaintiff as an additional insured.

88. Remco issued a Certificate of Liability Insurance, dated May 14, 2018 **(Exhibit B)** naming Plaintiff, a Commercial entity, a "Certificate Holder" on the

13

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

Contractor's CGL policy issued by AmGuard (Policy #DEBP990342), which was in effect during the renovation project.

89. Remco knew or should have known that the Certificate of Liability Insurance **(Exhibit B)** was being provided for a commercial project.

90. In reliance upon receiving the Certificate of Liability Insurance, Plaintiff entered into the Agreement with Contractor. **(Exhibit A).**

91. Plaintiff is identified an additional insured or "Certificate Holder" under Contractor's CGL policy (#DEBP990342) which was in place when the Agreement was signed and when the renovation project commenced in 2019.

92. The Contractor breached the Agreement by:

A. Failing to perform its construction services in a workmanlike manner resulting in significant water intrusion damage to Plaintiff's hotel;

B. Refusing to repair the water intrusion damage caused by its neglect; and

C. Alternatively, in the event the Court finds no coverage under the CGL policy, failing to procure proper CGL coverage during the renovation project with the limit identified in the Certificate of Liability Coverage; and

D. Failing to make sure Plaintiff was added as an additional insured on the Contractor's CGL Policy.

93. As a proximate result of the Contractor's failure to perform in a workmanlike manner, Plaintiff has suffered damages in excess of $500,000 to repair the roof and to repair and replace damaged personal property such as furniture and interior ceilings, walls, floors, carpet, trim and other interior finishes.

94. That the Contractor's corporate veil should be pierced because during all times relevant to this case:

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

E. the Oleyniks exercised such complete control over their corporation Dependable Quality Construction, LLC that the it lacked a separate mind, will or existence of its own;

F. the Oleyniks' control over the corporation was exercised in such a manner as to commit fraud against the Plaintiff;

G. as a proximate result of the Oleyniks' fraud, Plaintiff was led to wrongfully believe that the Contractor had properly procured a CGL policy for the project with a limit of $2,000,000;

H. The Oleyniks' fraud proximately caused Plaintiff to sustain repair damages in excess of $500,000;

I. That Defendants Valeriy Oleynik, Liliya Oleynik and the Contractor are jointly and severally liable to Plaintiff for repair damages in excess of $500,000, plus Plaintiff's reasonable attorneys' fees and litigation costs, punitive damages to be determined by the Court, plus prejudgment and post judgment interest.

95. Plaintiff further requests that the Court declare that the rainstorm, which proximately caused damage to Plaintiff's hotel, was an accident or "occurrence" under the Contractor's CGL policy issued by AmGuard.

96. Plaintiff further asks the Court to declare that part of the damages suffered by Plaintiff are consequential in nature and were covered under the CGL policy issued to the Contractor by AmGuard.

97. On September 18, 2018, Plaintiff through its agent submitted a Notice of Claim/Proof of Loss to AmGuard.

98. AmGuard acted in bad faith by failing to timely respond to Plaintiff's Notice of Claim/Proof of Loss.

99. AmGaurd's failure to timely respond to Plaintiff's claim and determine whether coverage existed under the Contractor's policy constituted bad faith under

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

Ohio law and proximately caused Plaintiff to suffer damages which may later be determined by the Court.

100.    AmGuard also acted in bad faith by denying Plaintiff's claim.

101.    As a proximate result of AmGuard's bad faith, Plaintiff has suffered damages in excess of $500,000 to repair its hotel.

102.    Because of AmGuard's bad faith, Plaintiff is entitled to recover the amounts it paid to repair its hotel, plus punitive damages, reasonable attorneys' fees and prejudgment and post-judgment interest at the statutory rate, which shall be determined later by the Court.

103.    In the event that the Court determines that no coverage exists under the CGL policy issued by AmGuard, then Remco was negligent by submitting the Certificate of Liability Coverage (**Exhibit B**) identifying Plaintiff as a "Certificate Holder" on the CGL policy issued by AmGuard; Remco's negligence proximately caused Plaintiff to incur damages in an amount to be later determined by the Court.

WHEREFORE, Plaintiff demands judgment as follows:

**Claim One:**  Judgment against Dependable Quality Construction, LLC for an amount in excess of $500,000, plus reasonable attorney's fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

**Claim Two:**  That Dependable Quality Construction, LLC's corporate veil be pierced and that it, along with Valeriy and Liliya Oleynik, be found jointly and severally liable for fraud and compensatory damages in excess of $500,000, plus punitive damages in an amount to be determined by the Court, Plaintiff's reasonable attorneys' fees and any other relief the Court deems just;

**Claim Three:**  Judgment against AmGuard for an amount in excess of $500,000, plus punitive damages, reasonable attorney's fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

**Claim Four:** Judgment against AmGuard for an amount in excess of $500,000, plus punitive damages, reasonable attorney's fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

**Claim Five:** Judgment against Remco for an amount in excess of $500,000, plus the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

**Claim Six:** Judgment against Remco for an amount in excess of $500,000, plus the costs and expenses incurred in this action plus prejudgment and post-judgment interest; and

**Claim Seven:** Declaratory Judgment against Defendants AmGuard and/or Remco, as stated in Paragraphs 81 - 103 above, for an amount in excess of $500,000, plus punitive damages, reasonable attorneys' fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest.

Respectfully submitted,

**LANE ALTON**

Robert M. Morrow     0012367
Joseph A. Gerling     0022065
Scott A. Fenton     0068097
Two Miranova Place, Suite 220
Columbus, Ohio 43215
(614) 228-6885
rmorrow@lanealton.com
jgerling@lanealton.com
sfenton@lanealton.com
**Attorneys for Defendants**

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

## JURY DEMAND

Answering Defendants hereby demand that the issues of this case be tried before a jury of eight (8) persons.

Respectfully submitted,

**LANE ALTON**

Robert M. Morrow      0012367
Joseph A. Gerling      0022065
Scott A. Fenton      0068097
Two Miranova Place, Suite 220
Columbus, Ohio 43215
(614) 228-6885
rmorrow@lanealton.com
jgerling@lanealton.com
sfenton@lanealton.com
**Attorneys for Defendants**

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

# RENOVATION AGREEMENT

### Agreement between Owner and Contractor

This AGREEMENT made as of the May 17, 2018 between the Owner: [Geeta Hospitality Inc, of 16610 Square Drive, Marysville, Oh, 43040] the Contractor: [Dependable Quality Construction, LLC of 416 Hoyt Court, Inman, SC 29349] and the Project (Hampton Inn, 16610 Square Dr. Marysville, Oh 43040).

The Owner and the Contractor agree as set forth below.

ARTICLE I.

**The Contract Documents**

Section 1.01. The Contract Documents, which constitute the entire agreement between the Owner and the Contractor are enumerated as follows;
(i) This Agreement;

Section 1.02. The Contract Documents form the Contract and all are fully a part of the Contract as if attached to this Agreement or repeated herein.

ARTICLE II.

**The Work**

Section 2.01. The Contractor shall perform all the Work set out in addendum A.

ARTICLE III.

**Time of Commencement and Substantial Completion**

The Work to be performed under this Contract shall commence on a mutually agreed upon date after execution of this Contract. Contractor is to make all efforts subject to the limitations in this Contract, to complete the Work as expeditiously as possible. Unnecessary interruption in the Work or failure to supply enough crews to adequately complete the Work with diligence will permit the Owner to have the right to seek any redress available under the terms of this Contract or as are available in law or equity.

The date of commencement of the Work shall be the date on which the date on which the Work actually starts. This Work has to be completed within 90 days from the commencement date. Completion shall be the date on which all Work may cease and all debris shall have been removed from the site by the Contractor, as determined by the Owner or its duly authorized representative. A grace period of 10 business days will be given for completion.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM



EXHIBIT

A

ARTICLE IV.

**Contract Sum**

Section 4.01. The Owner shall pay the Contractor in current funds for the performance of the Work, subject to additions and deductions by Change Order as provided in the Contract Document, the Contract Sum of $575,000. The Contract Sum includes all applicable sales and use taxes. Owner agrees to execute a Capital Improvement Certificate if requested by Contractor. Payment amount for partial work completed will be based on pro-ration of completed work. A 5% retainage will be withheld from every non-material invoice. This retainage will be paid to contractor after satisfactory completion of Work.

ARTICLE V.

Section 5.01. Based upon Applications for Payment submitted to the Owner by the Contractor , the Owner shall make progress payments on account of the Contract Sum to the Contractor for work done upon completion or partially by room.

Section 5.02. The Contract Sum includes the cost of all labor and materials required for the Work. It is expressly understood by the Contractor that the total cost of the Work to the Owner will in no event exceed the Contract Sum unless Change Orders are agreed upon by the Owner.

Section 5.03. The Owner in executing this Contract has relied upon Contractor's warranty and representations that it is familiar with the patent conditions of the building and the requirements of all public agencies having jurisdiction thereof.

Section 5.04. Payments may be withheld on account of: (i) defective Work not remedied, (ii) claims filed by third parties with respect to work performed under this Contract up to the amount of such claim plus ten percent (10%), (iii) failure of the Contractor to make payments properly to Subcontractors or for labor, materials, or equipment, (iv) reasonable evidence that the Work cannot be completed, (v) reasonable evidence that the Work will not be completed prior to the required completion date unless extended by mutual agreement and that the unpaid balance would not be adequate to cover actual damages for the anticipated delay, or (vi) persistent failure to carry out the Work in accordance with the Contract.

ARTICLE VI.

**Final Payment**

Section 6.01. Final payment, constituting the entire unpaid balance of the Contract Sum including retainage, shall be paid by the Owner to the Contractor within thirty (30) days after the final completion of the Work and after all of the following have occurred:

(a) The Contractor has certified to the Owner in writing that all Work has been completed;

(c) The Contractor has satisfactorily complied with all of the provisions of this Agreement and that no defects have appeared in the Work.

(d) The Contractor delivers to the Owner an affidavit acknowledging payment in full and releasing Owner from any liability.


ARTICLE VII.

Miscellaneous Provisions

Section 7.01. **Definitions.** Unless expressly defined in this Agreement, terms used in this Agreement which are defined in the General Conditions of the Contract shall have the meanings designated in those Conditions.

Section 7.02. **Unexpected Conditions.** Unforeseen or unforeseeable conditions, or conditions not previously observed by the Engineer and/or the Contractor may arise while the Work is in progress. Work in connection with such conditions, as and if discovered, shall be subject to field determination and direction by the Owner; and no Work and/or additional costs are, nor are to be construed as, authorized by Owner except as per written addendum hereto signed by Owner. Field observation by the Owner may result in a determination to limit the Work already specified in which event the Contract Sum shall be equitably reduced.

Section 7.03. **Certificates; Schedule of Work**
(a) The Contractor shall furnish certifications, governmental permits, and material specifications for approval, and all like required submissions within ten (10) days after the date hereof. The Contractor shall also supply a Schedule of Work to which Contractor shall adhere. Such Schedule shall conform to the time limitations set forth in Section 3.01 above. The Owner shall have the option to cancel this Contract if the Schedule of Work is not acceptable to Owner.
(b) The Work shall be undertaken at the Building only between the hours of 8:00 a.m. and 7:00 p.m. The Contractor shall not work on the Building on weekends or holidays without Owner's prior consent. All overtime or other extra charges incurred in connection with the Work during periods other than as specified in the first sentence shall be paid by Contractor.

Section 7.04. **Storage; Scaffolding; Protection**
(a) If Owner provides space within the Building or courtyard(s) for the storage of Contractor's materials and tools, Contractor shall agree that Owner shall have no obligations or liability for theft, damage, or loss. Contractor agrees to perform no Work in such space and to keep such space neat and broom clean and to remove each day all construction debris and garbage.
(b) Contractor shall take all steps necessary to protect workers, the public, and tenants in the Building from personal injury or property damage, including, without limitation, the erection of warning signs and roping off of courtyards and sidewalks affected by the work.
(c) Storage of materials in the Building will be limited to areas designated by the Owner. No rubbish accumulation is permitted. No storage of flammable materials or caustic chemicals is permitted in the Building. Contractor shall leave all roofs, hallways, courtyards, and other portions of the Building free of debris, and these areas shall be broom cleaned at the end of each workday. Damage to roof, hallways, windows, or other surfaces caused by Contractor shall be repaired promptly by the Contractor at [his/her] sole expense as directed by the Owner. Contractor shall replace any glass broken by the Work by the end of each working day.
(d) The Contractor shall leave the Work and the Building clean and in good condition at the end of every work day. Splatters on windows, sills, air-conditioners, and other areas shall be removed at Contractor's expense before the end of the work day, or sooner if directed by the Engineer.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

Section 7.08. **Safeguards.** Contractor shall be responsible at all times for safeguarding and securing the Premises against accidents or injury.

Section 7.09. **Permits.** - If required. Contractor shall be solely responsible for obtaining any required permits for the Work to be performed and/or equipment or protection means to be used or erected. Contractor shall keep such permits valid and in force throughout the project period. The costs or charges and fees are included for all such permits as an integral part of the Contract Sum. Unless otherwise directed, Contractor shall neither be responsible for the filing of Building Notices with the Building Department, nor for Certificates of Controlled Inspections required pursuant to such Building Notices.

Section 7.10. **Compliance with Codes.** Notwithstanding anything in the Specifications and/or the Contract or Contract Documents which may be or subsequently become a part hereof, Contractor shall at all times comply with the Building and Construction Code of the City of Marysville and all other codes or regulations having jurisdiction, including without limitation, the Occupational Safety and Health Act, the Environmental Protection Act, and related regulations of the federal government. However, Contractor shall advise Owner of any such conflict between Code requirements and the Specifications or this Contract.

Section 7.11. **Employee Safety.** Building Safety
(a) Contractor agrees that it is responsible and liable for the safety of its employees, agents, subcontractors, and/or their employees or agents, at all times during or in connection with the performance.

Section 7.12. **Owners Agents.**
(a) Contractor acknowledges that there are no agents of Owner who are authorized to act on behalf of owner except the GM of the hotel.

Section 7.13. **Payments Not Acceptance or Waiver.** The payment of any portion of the Contract Sum shall neither be deemed acceptance of the Work or any additional or optional Work or any part thereof nor approval of the manner in which the Work was performed. All payments are made on account of all Work and any additional or optional Work to be performed pursuant to this Contract and are not allocated to specific items of Work or additional Work performed pursuant to this Contract.

Section 7.14. **Right to Terminate Contract on Account of Contractor's Insolvency.** If the Contractor should be adjudged as a bankrupt or if it should make a general assignment for the benefit of creditors, or if a receiver should be appointed on account of its insolvency, then the Owner may, without prejudice to any other right or remedy, terminate this Agreement without further notice and take possession of the premises and all materials, tools, and appliances thereon to finish the work by whatever method the Owner may deem expedient. In such case, the Contractor shall be entitled to receive payment for all Work properly completed to the date of termination, provided, however that such sum shall not be paid until the Work is completed. If the expense of finishing the Work shall exceed the cost had this Agreement not terminated as provided herein, the Contractor shall pay such excess to the Owner.

Section 7.15. **Completion of Punch List Items.** Notwithstanding the final payment provisions recited herein above in this Agreement, if, on or before the tenth (10th) day prior to the date on which such payment shall be due pursuant to said provisions, Owner shall furnish Contractor

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

with a so-called "punch list," then on the date final payment is due, Owner shall be entitled to withhold the final payment until Contractor shall notify Owner that the punch list items have been completed (but in no event shall Owner be obligated to make such final payment prior to that day if any difference of opinion between Owner and Contractor as to the amount which Owner shall be entitled to withhold, and/or as to whether the punch list items have been completed, the matter(s) shall be resolved by the Engineer). If no resolution is effected within seven (7) days of the occurrence of the difference of opinion, the provisions governing disputes between the parties shall govern.

Section 7.16. **Cleaning Up.** "Contractors obligation as to cleaning up under this paragraph includes removal of paint stains and all smears from all surfaces, cleaning of lighting, plumbing, and other fixtures caused by the Contractor; cleaning all aluminum; and cleaning all resilient floors. Contractor shall be responsible for broken glass caused by Contractors acts.

Section 7.17. **Delays.** Owner's responsibility for delays caused by Owner, where not otherwise excused by events beyond its control (which such "beyond-control" events include labor controversies even though Owner is a party to any such controversy) is limited to granting an extension of time for performance but in no circumstances shall there be exposure to damages. This limitation applies to any other provision of these Conditions in the print thereof dealing with damages for delays or like provisions appearing elsewhere in the Contract Documents.

Section 7.18. **Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the state of Ohio, without reference to any conflicts of law principles thereof.

Section 7.19. **Communication.** All communication will be deemed lawful if sent be email.

ARTICLE VIII.

**Supervision**

Section 8.01. The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences, and procedures and for coordinating all portions of the Work under the Contract.

Section 8.02. The Contractor shall enforce good order among the Contractor's employees and other persons carrying out the Contract.

Section 8.03. The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract.

Section 8.04. The Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations, and lawful orders of any public authority bearing on the safety of persons or property or their protection from damage, injury, or loss.

Section 8.05. The Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting

danger signs and other warnings against hazards, promulgating safety regulations, and notifying owners and users of adjacent utilities.

Section 8.06. The Contractor shall promptly remedy all damage or loss to any property caused in whole or in part by the Contractor, any Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable and for which the Contractor is responsible except damage or loss attributable to the acts or omissions of the Owner or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor.

Section 8.07. The Contractor will make sure that its President will visit the site a minimum of once a week.

Section 8.08. Owner will be responsible for Contractor's lodging, dumpsters, storage containers and boom lift.


ARTICLE IX.

**Warranties**

Section 9.01. All materials and equipment supplied shall be as required by the Specifications and shall be new and of acceptable quality and condition. Unless elsewhere specified herein, the Contractor guaranties all workmanship and materials to be merchantable and free from latent and other defects for the periods described in the General Conditions. If any Work or materials are defective in any respect, Contractor warrants that [he/she] shall, at [his/her] own expense, repair or replace any and all equipment, parts, or structure promptly after notification by the Owner or its representative, but in all events within thirty (30) days of such notice.

Section 9.02. No material, supplies, or equipment for the Work shall be purchased by the Contractor subject to any chattel mortgage or under a conditional sale or other agreement by which an interest therein or in any part thereof is retained by the seller or supplier of such material, supplies, or equipment. The Contractor warrants good title to all materials, supplies, and equipment installed or incorporated in the Work and agrees upon completion of all Work to deliver the premises, together with all improvements and appurtenances constructed or placed thereon by [him/her], to the Owner free from any claims, liens, or charges and further agrees that neither [he/she] nor any person, firm, or corporation furnishing any material or labor for any Work covered by this Contract shall have any right to a lien upon the premises or any improvements or appurtenances thereon.

Section 9.03. The Contractor shall not at any time suffer or permit any lien, attachment, or other encumbrance under the laws of Ohio or otherwise by any person or persons whomsoever to remain on file against any money due or to become due for any Work done or materials furnished under the Contract or by reason of any other claim or demand against the Contractor. Such lien, attachment, or other encumbrance until it is removed shall preclude any payment due from Owner to Contractor and any and all claims or demands for any payment under and by virtue of the Contract up to the amount of such claim, demand or lien plus fifteen percent (15%).

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

Section 9.04. The Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment, and machinery, and other facilities and services necessary for the proper execution and completion of the Work.

Section 9.05. The roof work will have a warranty of 30 years and the rest of the work is warranted for 10 years.

## ARTICLE X.

### Cleaning Up and Repair

Section 10.01. Contractor shall leave all work areas clean and free of any garbage or debris or materials, whether used or new, upon completion of the Work. During the period while Work is ongoing, Contractor shall remove all debris from all interior parts of the Building on a daily basis. All other debris shall be removed on a regular basis or as per direction of Owner. Removal of debris shall be such as not to be detrimental to tenants or occupants. Emergency exists, doorways, and halls shall not be obstructed at any time. Hazardous or flammable materials shall not be stored or accumulated at any time, except during periods of actual use, and then only if appropriate or required safeguards are employed, including but not limited to the use of appropriate containers, fire extinguishers, and like safety measures, and upon the prior written notice to Owner.

Section 10.02. Owner shall provide appropriate containers for the accumulation of construction debris, and shall cause same to be removed or emptied, all in accordance with all requirements of government bodies having jurisdiction and/or other requirements. Contractor shall obtain all permits and pay all fees incident to the use of such containers and/or arrange for disposal of construction debris, and it shall hold Owner and [his/her] duly authorized representative harmless from and against all proceedings, or fines which may result from the accumulation, storage, and/or disposal of construction debris.

Section 10.03. The Contractor shall at all times keep the premises free from accumulations of waste material or rubbish caused by its employees or work, and at the completion of the work it shall remove all its remaining rubbish from and about the Building and all its tools, scaffolding, and surplus materials, and shall leave the Building "broom clean." In case of dispute, the Owner may remove the rubbish and charge the cost to the Contractor.

Section 10.04. At no time shall any rubbish be thrown from the windows or roof of the Building.

Section 10.05. When directed and before the final inspection, the entire exterior and interior of the Building and the surrounding areas shall be cleared of all rubbish caused by the Contractor including the following:
(a) All construction facilities, debris, and rubbish shall be removed from the Owner's property.
(b) Access spaces shall be left thoroughly clean.
(c) All material shall be new and in an undamaged condition.

Section 10.06. If a dispute arises between the Contractor and separate contractors as to their responsibility for cleaning up, the Owner may clean up and charge the cost thereof to the contractors responsible therefore.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

OWNER: Geeta Hospitality Inc.          CONTRACTOR: Dependable Quality Construction, LLC.

By: Amar Pandey, President                By: Valeriy Oleynik, President

16610 Square Dr.                          416 Hoyt Court
Marysville, OH 43040                      Inman, SC 29349

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

**ADDENDUM 'A' TO FOLLOW.**

ACORD®

DEPEN-2     OP ID: AK

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 05/14/2018 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER    215-357-7878 | CONTACT NAME: Alina A. Kreymer | | |
|---|---|---|---|
| Remco Insurance Services Inc 80 Second Street Pike - Ste #8 Southampton, PA 18966 Alina A. Kreymer | PHONE (A/C, No, Ext): 215-357-7878 | | FAX (A/C, No): 215-357-6640 |
| | E-MAIL ADDRESS: alina@remcoinsuranceservices.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A: AmGuard Insurance Group | | 42390 |
| INSURED   Dependable Quality Construction LLC 416 Hoyt Ct Inman, SC 29349 | INSURER B: | | |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES     CERTIFICATE NUMBER:        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | DEBP990342 | 03/02/2018 | 03/02/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50,000 |
| | | | | | | | | MED EXP (Any one person) | $ 15,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |
| | | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY [ ] SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY [ ] NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| | | UMBRELLA LIAB [ ] OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | EXCESS LIAB [ ] CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | | DED [ ] RETENTION $ | | | | | | | $ |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N | | | | | | PER STATUTE [ ] OTH-ER [ ] | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

EXHIBIT   B

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Geeta Hospitality Inc 16610 Square Drive Marysville, OH 43040 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE Alina A. Kreymer |

ACORD 25 (2016/03)         © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM



Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368
570-825-9900 (Toll-Free 800-673-2465)
FAX 570-825-0611
www.guard.com

09/19/2018

# Claim Acknowledgment

This memo confirms our receipt on 09/18/2018 of the following Notice of Loss:

**POLICYHOLDER:** DEPENDABLE QUALITY CONSTRUCTION LLC

**CARRIER:** AmGUARD Insurance Company

**POLICY #:** DEBP990342

**CLAIMANT:** The Hampton Inn

**DATE OF LOSS:** 09/08/2018

**LOSS LOCATION:** 16610 Square Dr, Marysville, OH 43040

**TYPE OF LOSS:** Professional Liability

**CLAIM TYPE:** Liability

**CLAIM #:** DEBP990342-001-001-001

**ADJUSTOR:** Lisa Stull

Extension:  4691    claims3@guard.com

Please use the claim number shown above in all correspondence and inquiries.  If you receive any notifications from outside parties about damages, be sure to forward them to us immediately.

## For more information, contact our
## Customer Service staff at  800-673-2465.



EXHIBIT

*C*

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and subjects such person to criminal and civil penalties.

CDN0771872071AA.001 856.02.A2.000000



 Marysville Hampton Inn      16610 Square Drive, Marysville, OH 43040      tel: **937.642.3777**
fax:  937.642.3778



Lisa Stull
Berkshire Hathaway GUARD
PO Box 1368
Wilkes-Barre, PA 18703

Re:     Policyholder:   Dependable Quality Construction LLC
         Carrier:         AmGUARD Insurance Company
         Policy No:      DEBP990342
         Date of Loss:   September 8, 2018
         Claim No:      DEBP990342-001-001-001

Dear Ms. Stull:

On or about May 17, 2018, we entered into an agreement with your insured, Dependable Quality Construction, LLC., to complete work on our behalf on our building at 16610 Square Drive, Marysville, Ohio 43040 including removal of the existing roof and installation of a new roof.

While working on the project, your insured negligently allowed water to enter the building resulting in significant damages in excess of $500,000 for water mitigation, repair and replacement of damages to the building, replacement of damaged furniture, and loss of income.

Our claim was presented to you and you provided a claim acknowledgement dated September 19, 2018 confirming receipt of the claim on or about September 18, 2018.  Subsequent to that, we have responded to your inquiries and provided documentation of our claim.  We are unaware of any outstanding requests or requirements at this time.

Lisa, we are extremely confused.  We have provided everything you have requested.  You have not provided us with any formal challenge or question as to coverage, liability, or damages yet it is now approximately ten (10) months since that acknowledgement and the claim is now not resolved.  Please contact the undersigned within the next ten (10) business days to make payment arrangements or we will be forced to contact the Ohio Department of Insurance and potentially pursue legal assistance in the resolution of this claim.

We look forward to your prompt response and assistance in this matter.

Best regards,

Amar Pandey
President
Geeta Hospitality Inc. dba Hampton Inn Marysville
16610 Square Dr., Marysville, OH 43040



EXHIBIT
D



USA official sponsor

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Phelan Insurance Agency
ATTN: Kristi
PO Box 1
Versailles, OH 45380

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lisa Stull
Berkshire Hathaway GUARD
PO Box 1368
Wilkes-Barre, PA. 18703

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7009 0820 0000 5173 2941

PS Form 3811, February 2004   Domestic Return Receipt



Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368
Toll-Free 800-673-2465
FAX 570-825-0611
www.guard.com

October 7, 2019

The Hampton Inn
16610 Square Dr
Marysville OH  43040

Policyholder:     DEPENDABLE QUALITY CONSTRUCTION LLC
Claimant:         The Hampton Inn
Claim #:          DEBP990342-001-001-001
Date of Loss:     09/08/2018
Claim Type:       Liability

Dear Sir/Madam:

We have concluded our investigation into the above mentioned claim and we have determined that that there is no applicable coverage under our insureds policy for your claimed damages. If there is any information that may be valuable or could compromise our position to this investigation please submit corresponding documentation for our review.  Therefore, we must respectfully deny your claim.

I may be reached at 800-673-2465, extension 7820 between the hours of 8:00am and 4:30pm Monday through Friday.  If leaving me a voicemail message, fax or email, please reference your claim number.

Sincerely,

KaSheena Roberts
Liability Claims Representative II
1-800-673-2465 Ext. 7820  claims3@guard.com



Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and subjects such person to criminal and civil penalties.

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM



Bryon R. Kaster
Attorney at Law
Admitted in PA

717-731-4800
Fax: 888-811-7144
bkaster@dmclaw.com

September 23, 2019

Dependable Quality Construction, Inc.
416 Hoyt Ct.
Inman , SC  29349

RE:  **Policy No.: DEBP990342**
**Claimant: Hospitality Synergy Group, Inc.**
**Claim No.: DEBP990342-001-001-001**
**Our File No.: 0056069.0393229**

Dear Sir / Madam:

My law firm has been retained by AmGUARD Insurance Company (hereinafter referred to as "AmGUARD") with respect to a potential claim for coverage under the above referenced policy of insurance by Hospitality Synergy Group, Inc.  Please be advised that there is no coverage because AmGUARD is rescinding the policy of insurance based upon materially false statements in the insurance application.

As you know, AmGUARD issued a policy of insurance, policy number DEBP990342 (hereinafter referred to as "the Policy"), based upon an application that, in part, asked the following questions:

> **Does the prospect do roofing work?**
> **What is the percentage of residential work?**
> **What is the percentage of commercial work?**

The following answers were given on the application to each of these questions:

> **Does the prospect do roofing work?**          **No**
> **What is the percentage of residential work?**   **100%**
> **What is the percentage of commercial work?**    **0%**

These questions were material to the risk covered in the Policy, and AmGUARD relied upon these answers in issuing the Policy.  Section 4 of the Policy Information Page of the Policy describes the business as "Residential Remodelers".  The premiums set forth on the

DICKIE, McCAMEY & CHILCOTE, P.C. | ATTORNEYS AT LAW
MAIN: 717-731-4600  FAX: 888-811-7144
2578 INTERSTATE DRIVE, SUITE 105 | HARRISBURG, PA 17110-9301 | WWW.DMCLAW.COM

CALIFORNIA | COLORADO | DELAWARE | MICHIGAN
NEW JERSEY | NEW YORK | NORTH CAROLINA | OHIO
PENNSYLVANIA | SOUTH CAROLINA | WEST VIRGINIA



EXHIBIT

F

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM

September 23, 2019
Page 2

Policy Information Page were established based upon the information provided in the application.

The Examinations Under Oath ("EUO") of Valeriy Oleynik and Liliya Oleynik took place on April 26, 2019 in Laurens County, South Carolina. Mr. and Mrs. Oleynik testified that they are the owners of Dependable Quality Construction, Inc., and they testified that they formed the company in 2017. Mr. and Mrs. Oleynik testified that they applied for the Policy through the agency, REMCO INSURANCE SERVICES, INC. ("REMCO") located in Southampton, Pennsylvania. According to the Oleyniks, they provided information to REMCO as part of the application process. During the EUO, Valeriy testified that Dependable Quality Construction, Inc. has only ever done commercial work and has done roofing work, contrary to the answers provided on the application.

Based upon the testimony of the Oleyniks and the materially false statements in the insurance application, please be advised that there is no coverage for the potential claim because AmGUARD is rescinding the policy of insurance. However, if you believe that this decision is in error and you have any additional information that you would like AmGUARD to consider, kindly provide that information at your earliest convenience.

Very truly yours,

Bryon R. Kaster

BRK/mas

cc:     REMCO INSURANCE SERVICES, INC.
        80 Second Street Pike
        Suite 8
        Southampton, PA 18966

        PHELAN INSURANCE AGENCY, INC. / ATTN: Amanda Phelan
        (amanda_phelan@phelanins.com)

PC Data Centers Wednesday, September 9, 2020 6:34:17 AM



U.S. POSTAGE >> PITNEY BOWES

ZIP 43040 $ 008.60⁰
02 4W
0000367383 SEP 02 2020



CERTIFIED MAIL®

9414 7266 9904 2163 1042 86

**UNION COUNTY CLERK OF COURTS**
**215 WEST 5th STREET**
**COURTHOUSE**
**MARYSVILLE, OH 43040**

20CV0122
9414 7266 9904 2163 1042 62
Amguard Insurance Company
PO BOX 1368
WILKES-BARRE, PA 18703

C

FOLD AND TEAR THIS WAY →

Thank you for using Return Receipt Service

**RETURN RECEIPT REQUESTED**
**USPS® MAIL CARRIER**
**DETACH ALONG PERFORATION**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Thank you for using Return Receipt Service