## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

GEETA HOSPITALITY INC.                    :
dba Hampton Inn Marysville
16610 Square Drive                        :     **Civil Action 2:20-cv-5276**
Marysville, OH  43040,
                                          :     **Judge Sarah D. Morrison**
        **Plaintiff,**
                                          :     **Chief Magistrate Judge**
     **-vs-**                                   **Elizabeth P. Deavers**
                                          :
DEPENDABLE QUALITY                              **Jury Demand Endorsed Hereon**
CONSTRUCTION, LLC                         :
c/o Valeriy Oleynik, Statutory Agent
416 Hoyt Court                            :     **AMENDED COMPLAINT**
Inman, SC  29349,
                                          :
        -and-
                                          :
VALERIY OLEYNIK
416 Hoyt Court                            :
Inman, SC 29349,
                                          :
        -and-
                                          :
LILIYA OLEYNIK
416 Hoyt Court                            :
Inman, SC 29349,
                                          :
        -and-
                                          :
AMGUARD INSURANCE COMPANY
P.O. Box 1368                             :
Wilkes-Barre, PA  18703-1368,
                                          :
        -and-
                                          :
REMCO INSURANCE SERVICES, INC.
80 Second Street                          :
Pike-Suite No. 8
South Hampton, PA  18965,                 :

        **Defendants.**                   :

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Geeta Hospitality Inc. dba Hampton Inn Marysville, for its Amended Complaint against Defendants Dependable Quality Construction, LLC, AmGuard Insurance Company and Remco Insurance Services, Inc., and alleges and avers as follows:

### Jurisdiction

1.      This case was originally filed in the Court of Common Pleas of Union County, Ohio.  On October 8, 2020, Defendant AmGuard Insurance Company ("AmGuard") filed its Notice of Removal, pursuant to 28 U.S.C. § 1332.  (Doc. 1.)

### Facts Common to All Claims

2.      Plaintiff Geeta Hospitality Inc. is the owner and operator of the Hampton Inn Marysville ("Plaintiff"), located at 16610 Square Drive, Marysville, Ohio  43040.

3.      Defendant Dependable Quality Construction, LLC ("DQC") is a general contractor who maintains a principal place of business located at 416 Hoyt Court, Inman, South Carolina  29349.

4.      Defendant Valeriy Oleynik and Liliya Oleynik are married and reside at 416 Hoyt Court, Inman, South Carolina  29349.

5.      Upon information and belief, Valeriy and Liliya Oleynik (collectively "the Oleyniks") are the DQC's 's sole members, owners and employees.

6.      Defendant Remco Insurance Services Inc. ("Remco") is an insurance broker with a principal place of business located at 80 Second Street Pike, Suite 8, Southampton, PA 18966.

2

7.      In December of 2017, Remco's Senior Account Executive Alina Kreymer assisted Mrs. Oleynik in applying on DQC's behalf for a commercial general liability policy from AmGuard, who has a principal place of business located at P.O. Box 1368, Wilkes-Barre, PA 18703-1368.

8.      Based upon an insurance application that Ms. Kreymer submitted on DQC's behalf, AmGuard issued a  Commercial General Liability Policy, No. DEBP990342, to DQC in February of 2018 ("the Policy").

9.      The Oleyniks and Ms. Kreymer received a copy of the Policy soon after it was issued.

10.      On or about May 17, 2018, the Plaintiff entered into a Renovation Agreement ("Agreement") with DQC.  A true and accurate copy of the Renovation Agreement is attached hereto as **Exhibit A.**

11.      DQC 's scope of services under the Agreement included renovation of the hotel and replacement of the existing metal roof with a new EPDM rubber roof.

12.      The Agreement also required DQC  to be "responsible at all times for safeguarding and securing the Premises against accidents or injury."  Agreement § 7.08.

13.      As a precondition to the Agreement, DQC was required to obtain a commercial general liability policy naming Plaintiff as an additional insured.

14.      Upon information and belief, Ms. Oleynik told Ms. Kreymer that the proposed Agreement required DQC to have commercial general liability coverage.

3

15.    Upon information and belief, Ms. Oleynik asked Ms. Kreymer to have Plaintiff added as an additional insured under DQC's Policy.

16.    On or about May 14, 2018, the DQC  provided Plaintiff with a Certificate of Liability Insurance which identified Plaintiff as a "Certificate Holder" or additional insured under the DQC 's Policy.  A true and accurate copy of the Certificate of Liability Insurance is attached hereto as **Exhibit B**.

17.    At the time Remco issued the Certificate of Liability Insurance, Ms. Kreymer and Remco knew that Plaintiff was the owner of a hotel located at 16610 Square Drive, Marysville, Ohio 43040.

18.    At time Remco prepared and issued the Certificate of Liability Insurance identifying Plaintiff as a Certificate Holder under the Policy, Remco knew that DQC's insurance application had represented that DQC was only involved in residential remodeling work and that DQC was not involved in commercial work or roofing work and that Remco also knew that it had not requested that Plaintiff be added as an additional insured on DQC's Policy; and that Plaintiff had not been made an additional insured under DQC's Policy.

19.    DQC never provided a copy of its Policy to Plaintiff.

20.    Before signing the Agreement and commencing work, DQC did not inform Plaintiff that it was only insured to perform residential work or that Plaintiff was not an additional insured under DQC's Policy.

21.    Plaintiff detrimentally relied on the Certificate of Liability Insurance by signing the Agreement and allowing DQC to commence work on the project. But for the Certificate of Liability Insurance identifying the Plaintiff as a "Certificate

4

Holder" under DQC's Policy, Plaintiff would not have entered into the Agreement with DQC .

22. In September of 2018, DQC commenced construction on the renovation project.

23. Soon after the existing roof was removed, a rainstorm occurred, catching DQC completely unprepared to cover and protect the building from the storm resulting in significant water intrusion damage to the interior of the hotel, including but not limited to damage to the ceilings, walls, carpet, furniture and other interior finishes on at least 20 rooms on the third floor of the hotel.

24. On or about September 18, 2018, Plaintiff, through its agent, submitted a Notice of Claim/Proof of Loss to AmGuard for the damage, which was acknowledged by AmGuard on or about September 19, 2019. A true and accurate copy of the Notice of Claim/Proof of Loss is attached hereto as **Exhibit C.**

25. AmGuard was extremely dilatory in responding to the Plaintiff's claim. Plaintiff contacted AmGuard numerous times during the balance of 2018 and 2019, without receiving any response from AmGuard.

26. On or about July 29, 2019, Plaintiff sent a certified letter to AmGuard demanding action on its claim. A true and accurate copy of the certified letter is attached hereto as **Exhibit D**.

27. After no action was taken, Plaintiff filed a written complaint with the Ohio Department of Insurance in August of 2019. The complaint triggered a claim denial letter from AmGuard on October 7, 2019. A true and accurate copy of the claim denial letter is attached hereto as **Exhibit E.**

5

28.    To date, Plaintiff has been forced to pay more than $500,000 to mitigate the water damage and to repair and replace interior finishes.  DQC has refused to reimburse Plaintiff for the costs to repair the storm damage to the hotel.

**CLAIM ONE – Breach of Contract by Dependable Quality Construction**

29.    Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

30.    Plaintiff fully complied with all of its duties and obligations under the Agreement.

31.    The DQC breached the Agreement by:

    A.    Failing to perform its construction services in a workmanlike manner resulting in significant water intrusion damage to Plaintiff's hotel;

    B.    Refusing to reimburse Plaintiff for the costs to repair the water intrusion damage caused by DQC's neglect; and

    C.    Alternatively, in the event the Court finds no coverage under the Policy policy, failing to procure proper commercial general liability coverage during the renovation project with the limit identified in the Certificate of Liability Coverage; and

    D.    Failing to make sure Plaintiff was added as an additional insured on the DQC's Policy.

32.    As a proximate result of DQC's breaches of contract, Plaintiff has suffered damages in excess of $500,000.

6

## CLAIM TWO – Fraud by Dependable Quality Construction, Valeriy and Liliya Olenik

33.    Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

34.    Upon information and belief, Defendants Valeriy and Liliya Olenik incorporated DQC in 2017 and are believed to be DQC's sole owners and employees.

35.    The Oleyniks own a single-family home, located at 416 Hoyt Court, S.C., 29349, which is the same address from which they operate DQC.

36.    Valeriy Oleynik, while negotiating the Renovation Agreement **(Exhibit A)** on behalf of DQC, falsely represented to Plaintiff that DQC had obtained a commercial general liability policy as required by the Agreement.

37.    Upon information and belief, the Oleyniks knew or should have known that the DQC's Policy was obtained by fraudulent means and/or that it did not provide the insurance coverage required by the Agreement.

38.    The Oleyniks also knew or should have known that Plaintiff was not an additional insured under DQC's Policy at the time DQC signed the Agreement and commenced work on the project.

39.    Valeriy and Liliya Oleynik both conspired and/or acted in concert and participated in obtaining the Policy by fraudulent means.  With the assistance of Remco, the Oleyniks knowingly misrepresented in their insurance application that the DQC (1) did not perform any roofing work; (2) only performed residential work; and (3) performed no commercial work.  **(Exhibit F)**.

7

40.     The Oleyniks did not inform Plaintiff that they knowingly provided false and misleading information in order to procure the Policy or that Plaintiff was not made an additional insured under the Policy.

41.     Plaintiff detrimentally relied upon DQC's representations by agreeing to enter into the Agreement and allowing DQC to commence work on the project.

42.     Had Plaintiff known that DQC's policy did not cover the work to be performed under the Agreement or that Plaintiff had not been made an additional insured under a commercial general liability policy covering the project, Plaintiff would not have entered into the Renovation Agreement.

43.     The DQC's 's corporate veil should be pierced because during all times relevant to this case:

> A.     The Oleyniks exercised such complete control over their corporation that the DQC lacked a separate mind, will or existence of its own;
>
> B.     The Oleyniks' control over DQC was exercised in such a manner as to commit fraud against the Plaintiff;
>
> C.     As a proximate result of the Oleyniks' fraud, Plaintiff was led to wrongfully believe that DQC had properly procured commercial general liability policy for the project providing the coverage required by the parties' Agreement;
>
> D.     The Oleyniks' fraud proximately caused Plaintiff to sustain damages in excess of $500,000, plus attorneys' fees.

E.    In addition to piercing DQC's corporate veil, Plaintiff demands damages, jointly and severally, against DQC and Valeriy and Liliya Oleynik in excess of $500,000, plus recovery of Plaintiff's reasonable attorneys' fees and litigation costs, punitive damages and prejudgment and post judgment interest.

### CLAIM THREE - Breach of Contract by AmGuard

44.    Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

45.    Upon information and belief, Plaintiff was a "Certificate Holder" or additional insured under DQC's Policy (# DEBP990342).

46.    Alternatively, Plaintiff was an intended third-party beneficiary under the Policy.

47.    AmGuard breached the Policy by failing to timely respond to Plaintiff's Notice of Claim/Proof of Loss submitted to AmGuard.

48.    AmGuard did not respond to Plaintiff's claim until it was forced to act after Plaintiff filed a complaint against AmGuard with the Ohio Department of Insurance.

49.    AmGuard breached its Agreement with Plaintiff by failing to pay for the damage resulting from the rainstorm, which includes significant consequential damages to the hotel caused by DQC's negligence

9

50.     AmGuard's authorized agent, Remco, led Plaintiff to believe that it was a Certificate Holder under DQC's Policy, and that the Policy covered the project.

51.     As a proximate result of AmGuard's breach of contract, Plaintiff has suffered damages in an amount in excess of $500,000, plus prejudgment and post-judgment interest and the costs and expenses of this litigation.

### CLAIM FOUR - Bad Faith by AmGuard

52.     Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

53.     On or about May 14, 2018, AmGuard's agent Remco issued a Certificate of Liability Insurance identifying Plaintiff as a "Certificate Holder" or additional insured under DQC's Policy (# DEBP990342).

54.     In September of 2018,  soon after the damage to the hotel occurred, Plaintiff submitted a Notice of Claim/Proof of Loss ("Claim") to AmGuard for the damages caused by the rainstorm and DQC's negligence.

55.     AmGuard, however, did not respond to Plaintiff's Claim until after Plaintiff filed a complaint against AmGuard with the Ohio Department of Insurance.

56.     On October 7, 2019, AmGuard issued a claim denial letter.

57.     AmGuard owed a duty to exercise good faith in processing Plaintiff's Claim.

58.     AmGuard's failure to provide a timely coverage determination is not reasonably justified.

59.     As a direct and proximate result of the bad faith actions by AmGuard, Plaintiff was required to spend over $500,000 of its own funds to repair the building and, on top of that, hire legal counsel to file this action.

60.     AmGuard's actions constitute bad faith and justify an award of compensatory, consequential and punitive damages, attorneys' fees, prejudgment and post-judgment interest and the costs and expenses of this litigation.

## CLAIM FIVE – Professional Negligence Against Remco Insurance Services

61.     Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

62.     In December of 2017, Remco's Senior Account Executive, Alina Kreymer, filed an application, on behalf of DQC to obtain a commercial general liability policy form AmGuard.

63.     The application submitted by Ms. Kreymer represented that DQC only performed residential remodeling work and performed no commercial or roofing work.

64.     Upon information and belief, Remco knew or should have known that DQC performed both commercial and roofing work at the time it assisted DQC in applying for insurance from AmGuard.

65.     Upon information and belief, Remco knew or should have known that the Oleyniks provided false and/or incomplete information on their insurance application.

11

66.    After the Policy was issued, Mrs. Oleynik notified Ms. Kreymer that DQC was negotiating the contract with Plaintiff to renovate its Ohio hotel and that as a condition of the contract, DQC was required to have insurance coverage for the project and make Plaintiff an additional insured under DQC's Policy.

67.    Ms. Oleynik asked Ms. Kreymer to contact AmGuard and have Plaintiff added as an additional insured under its policy.  However, Remco never requested, or alternatively was unsuccessful, in having Plaintiff added as an additional insured under the Policy.

68.    At the time the Certificate of Insurance was issued by Ms. Kreymer, she knew that it falsely identified Plaintiff additional insured under DQC's Policy and that the Policy did not cover commercial or roofing work.

69.    Ms. Kreymer and Remco knew that the Certificate of Insurance was requested in order to induce Plaintiff to enter into a contract with DQC to renovate Plaintiff's Marysville, Ohio hotel.

70.    Remco breached its standard of care by providing a Certificate of Liability Insurance purporting to make Plaintiff a Certificate Holder under DQC's Policy even though Remco knew or should have known at the time that Plaintiff was not an additional insured under the Policy.

71.    As a proximate result of Remco's negligence, Plaintiff has incurred damages in excess of $500,000 to repair the property, plus consequential damages and costs and expenses to pursue this action.

### CLAIM SIX – Intentional and/or Negligent Misrepresentation Against Remco Insurance Services

72.     Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

73.     In December of 2017, Alina Kreymer, Senior Account Executive with Remco filed an application on behalf of DQC with AmGuard to obtain commercial general liability policy.

74.     Ms. Kreymer obtained the information for the application during a telephone conversation with Lilya Oleynik.

75.     The insurance application prepared by Ms. Kreymer and Remco provided the following answers concerning DQC's business:

| | |
|---|---|
| **Does the prospect do roof work?** | **\*() Yes (X) No** |
| **What is the percentage of residential work?** | **\*100** |
| **What is the percentage of commercial work?** | **\*0** |

76.     Based upon the information provided by Remco in the insurance application, AmGuard issued DQC's Policy (No. DEBP990342) in February of 2018.

77.     In February of 2018, Remco received a copy of DQC's Policy which identified DQC as being a Residential Remodeler.

78.     In May of 2018, the Lilia Oleynik  notified Ms. Kreymer that DQC desired to enter into the Agreement to renovate Plaintiff's Ohio hotel.

79.     Mrs. Oleynik further advised Ms. Kreymer that as a precondition to the Agreement, that Plaintiff required DQC to have commercial general liability

insurance to cover the Ohio project and that Plaintiff had to be added as an additional insured on the DQC's Policy.

80.    Ms. Oleynik asked Ms. Kreymer to add Plaintiff as an additional insured under DQC's Policy and prepare a Certificate of Liability Insurance identifying Plaintiff as a Certificate Holder under the Policy.

81.    Ms. Kreymer was either unsuccessful or failed to request that Plaintiff be added as an additional insured under DQC's Policy.

82.    On May 14, 2018, Ms. Kreymer prepared a Certificate of Liability Insurance falsely representing that Plaintiff was a "Certificate Holder" or additional insured under  DQC's Policy and indicating that the Policy covered an Ohio commercial project.

83.    Because Ms. Kreymer assisted DQC in obtaining the Policy and had a copy of the Policy before preparing the Certificate of Liability Insurance, Ms. Kreymer and Remco knew or should have known that the Policy did not cover a commercial renovation project and that Plaintiff was not an additional insured under the Policy.

84.    Ms. Kreymer and Remco knew that that the Certificate of Insurance was intended to be given to Plaintiff to induce it into contracting with DQC for the Hampton Inn renovation project.

85.    Remco knew or should have known that Plaintiff would justifiably and detrimentally rely upon being identified as a Certificate Holder under the Policy.

86.    As a proximate result of Remco's intentional and/or negligent misrepresentations, Plaintiff has incurred damages in excess of $500,000.

14

87.    Remco is liable to Plaintiff for all repair costs, consequential damages, plus punitive damages, attorneys' fees, prejudgment and post-judgment interest and the expenses and costs of this action.

### CLAIM SEVEN – Civil Conspiracy by Defendants DQC, Valeriy and Liliya Oleynik and Remco

88.    Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

89.    DQC, Valeriy and Lilya Oleynik and Remco conspired and acted in concert to commit fraud against Plaintiff by providing a Certificate of Insurance to Plaintiff that Defendants knew falsely identified Plaintiff as a "Certificate Holder" or additional insured under DQC's Policy which at the time they knew or should have known did not provide coverage for a commercial construction project or involving roofing work.

90.    Defendants DQC and Remco also knew or should have known that Plaintiff would detrimentally rely upon the representations in the Certificate of Insurance by contracting with DQC and allowing it to commence work on the project.

91.    DQC, Valeriy and Lilya Oleynik and Remco are jointly and severally liable for the costs to repair Plaintiff's hotel, plus punitive damages, attorneys' fees, prejudgment and post-judgment interest and the expenses and costs of this action.

### CLAIM EIGHT – Remco's Aiding and Abetting Fraud

92.    Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

93.　Alternatively, Remco is liable for aiding and abetting fraud by knowingly giving substantial assistance to the efforts by the Oleyniks and DQC to to deceive Plaintiff into believing that DQC's Policy covered a commercial renovation project which involved roofing work and that Plaintiff was Certificate Holder and additional insured under the Policy.

94.　As a result of Remco's misconduct, Plaintiff has incurred over a half-million dollars in out of pocket costs to repair its hotel.

**CLAIM NINE - Declaratory Judgment Against Defendants, R.C. 2721.02**

95.　Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

96.　An actual, present and justiciable controversy exists between Plaintiff and Defendants on the following matters.

97.　Pursuant to Ohio Revised Code § 2721.02, Plaintiff asks the Court for a declaratory judgment as stated in the aforementioned allegations contained in paragraphs 1-94, and including but not limited to the following:

**Breach of Contract by DQC**

98.　That DQC breached the Agreement by:

　　A.　Failing to perform its construction services in a workmanlike manner resulting in significant water intrusion damage to Plaintiff's hotel;

　　B.　In the event the Court finds no coverage under the Policy, by failing to procure proper commercial general liability coverage for the renovation project as required by the parties'

Agreement with the limits identified in the Certificate of Liability Coverage; and

C.    Failing to make sure Plaintiff was added as an additional insured to a DQC's Policy.

99.    That DQC's corporate veil should be pierced because:

A.    the Oleyniks exercised such complete control over their corporation that DQC lacked a separate mind, will or existence of its own;

B.    the Oleyniks' control over the corporation was exercised in such a manner as to commit fraud against the Plaintiff;

C.    as a proximate result of the Oleyniks' fraud, Plaintiff was led to wrongfully believe that DQC had properly procured the Policy for the project and that Plaintiff had been added as an additional insured under the policy;

D.    The Oleyniks' fraud has proximately caused Plaintiff to sustain damages;

E.    That Valeriy and Liliya Oleynik be held jointly and severally liable for damages in excess of $500,000, plus recovery of Plaintiff's reasonable attorneys' fees and litigation costs, punitive damages and prejudgment and post-judgment interest.

## Fraud by Defendants DQC, Valeriy and Lilya Olenik

100.        That Defendants Valeriy and Liliya Oleynik and DQC committed fraud by intentionally misrepresenting that Plaintiff was a Certificate Holder and additional insured under DQC's Policy and that the Policy had the insurance required by the parties' Agreement.

101.        That Defendants DQC, Valeriy and Liliya Oleynik are jointly and severally liable for Plaintiff damages in excess of $500,000, plus punitive damages, attorneys' fees, prejudgment and post-judgment interest and the costs and expenses in this action.

## Civil Conspiracy Against Defendants DQC, Valeriy and Lilya Olenik and Remco

102.        That Valeriy and Liliya Oleynik, DQC and Remco conspired and/or acted in concert to commit fraud against Plaintiff by misrepresenting that DQC had coverage for the Hampton Inn renovation project and that Plaintiff was a Certificate Holder and additional insured under DQC's Policy.

103.        That Valeriy and Liliya Oleynik, DQC and Remco be jointly and severally liable for Plaintiff's damages, including the costs incurred to repair the property, punitive damages, reasonable attorneys' fees, prejudgment and post-judgment interest and costs of this action.

## Aiding and Abetting Fraud by Remco

104.        Alternatively, that Remco aided and abetted fraud by knowingly giving substantial assistance to the Oleyniks and DQC in their successful efforts to deceive Plaintiff into believing that DQC's Policy covered a commercial renovation project which included roofing work and that Plaintiff was Certificate

18

Holder and additional insured under DQC's Policy, resulting in Plaintiff's damages alleged in this action.

### Intentional and Negligent Misrepresentation by Remco

105.     That Remco intentionally and/or negligently misrepresented in the Certificate of Insurance that DQC had the coverage and limits identified in the Certificate; that the Policy covered a commercial project which involved roofing work and that Plaintiff was a Certificate Holder and additional insured under DQC's Policy.

106.     That in reliance upon receiving the Certificate of Insurance, Plaintiff entered into the Agreement with DQC,

107.     That Remco be liable for the damages caused by its intentional and/or negligent misrepresentations, including repair damages, punitive damages, reasonable attorney's fees and prejudgment and post judgment interest.

### Professional Negligence by Remco

108.     That for the foregoing reasons, Remco breached its professional standard of care, and therefore, was negligent by failing to act with the degree of skill, knowledge, care and diligence normally applied to insurance brokers and agents under the circumstances of this case.

109.     That Remco's negligence was   a proximate cause of Plaintiff's damages.

### Breach of Contract by AmGuard

110.     That the Court declare that the rainstorm, which proximately caused damage to Plaintiff's hotel, was an accident or "occurrence" under DQC's Policy.

111.     That Plaintiff was an additional insured under DQC's Policy.

112.     Plaintiff further asks the Court to declare that part of the damages suffered by Plaintiff are consequential in nature and were covered under the Policy issued to the Contractor by AmGuard.

113.     That AmGuard breached its duties to Plaintiff under the Policy by failing to timely settle Plaintiff's claim and pay for the direct and consequential damages caused by the rainstorm.

114.     That AmGuard be ordered to reimburse Plaintiff for its out of pocket costs incurred to repair the damage to the hotel, plus prejudgment and post-judgment interest and the costs and expenses in this action.

### Bad Faith by AmGuard

115.     That AmGaurd acted in bad faith by failing to timely respond to Plaintiff's Proof of Claim/Loss that it received on September 18, 2018 and by denying Plaintiff's claim.

116.     As a proximate result of AmGuard's bad faith, Plaintiff is entitled to recover the amounts it paid to repair its hotel, plus punitive damages, reasonable attorneys' fees and prejudgment and post-judgment interest at the statutory rate, which shall be determined later by the Court.

**WHEREFORE**, Plaintiff demands judgment as follows:

**Claim One:**  Judgment against Dependable Quality Construction, LLC for an amount in excess of $500,000, plus reasonable attorney's fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

**Claim Two:**  That Dependable Quality Construction, LLC's corporate veil be pierced and that it, along with Valeriy and Liliya Oleynik, be found jointly and severally liable for fraud and compensatory damages in excess of $500,000,

plus punitive damages in an amount to be determined by the Court, Plaintiff's reasonable attorneys' fees and any other relief the Court deems just;

**Claim Three:** Judgment against AmGuard for an amount in excess of $500,000, plus punitive damages, reasonable attorney's fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

**Claim Four:** Judgment against AmGuard for an amount in excess of $500,000, plus punitive damages, reasonable attorney's fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

**Claim Five:** Judgment against Remco for an amount in excess of $500,000, plus the costs and expenses incurred in this action plus prejudgment and post-judgment interest;

**Claim Six:** Judgment against Remco for an amount in excess of $500,000, plus punitive damages, attorneys' fees, prejudgment and post-judgment interest and the costs of this action;

**Claim Seven:** Judgment against Remco for an amount in excess of $500,000, plus punitive damages, attorneys' fees, prejudgment and post-judgment interest and the costs of this action;

**Claim Eight:** Judgment against Remco for an amount in excess of $500,000, plus punitive damages, attorneys' fees, prejudgment and post-judgment interest and the costs of this action;

**Claim Nine:** Declaratory Judgment against Defendants AmGuard and/or Remco, as stated in Paragraphs 81 - 103 above, for an amount in excess of $500,000, plus punitive damages, reasonable attorneys' fees and the costs and expenses incurred in this action plus prejudgment and post-judgment interest.

Respectfully submitted,

**LANE ALTON**

/s/ Joseph A. Gerling

| | |
|---|---|
| Robert M. Morrow | 0012367 |
| Joseph A. Gerling | 0022065 |
| Scott A. Fenton | 0068097 |

Two Miranova Place, Suite 220
Columbus, Ohio 43215
(614) 228-6885
rmorrow@lanealton.com
jgerling@lanealton.com
sfenton@lanealton.com
Attorneys for Defendants

## JURY DEMAND

Answering Defendants hereby demand that the issues of this case be tried before a jury of eight (8) persons.

Respectfully submitted,

**LANE ALTON**

/s/ Joseph A. Gerling

| | |
|---|---|
| Robert M. Morrow | 0012367 |
| Joseph A. Gerling | 0022065 |
| Scott A. Fenton | 0068097 |

Two Miranova Place, Suite 220
Columbus, Ohio 43215
(614) 228-6885
rmorrow@lanealton.com
jgerling@lanealton.com
sfenton@lanealton.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2020 a copy of the

foregoing Amended Compliant was served upon the following via electronic mail:

Steven G. Janik
Chrystal L. Maluchnik
Janik L.L.P.
9200 South Hills Blvd., Suite 300
Cleveland, OH  44147-3521
Steven.Janik@Janiklaw.com
Crystal.Maluchnik@Janiklaw.com

*Counsel for Defendants Dependable Quality
Construction, LLC, Valeriy and Lilya Oleynik*

Gregory D. Brunton, Esq.
Joseph K. Merical, Esq.
Gordon Rees Scully Mansukhani LLP
41 South High Street, Suite 2495
Columbus, Ohio 43215
gbrunton@grsm.com
jmerical@grsm.com

*Counsel for Defendant AmGuard Insurance Company*

Zachary B. Pyers,
Kenton H. Steele
Reminger
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
zpyers@reminger.com
ksteele@reminger.com

*Counsel for Defendant Remco Insurance Services, Inc.*

/s/ Joseph A. Gerling
_____
Joseph A. Gerling          0022054

# RENOVATION AGREEMENT

### Agreement between Owner and Contractor

This AGREEMENT made as of the May 17, 2018 between the Owner: [Geeta Hospitality Inc, of 16610 Square Drive, Marysville, Oh, 43040] the Contractor: [Dependable Quality Construction, LLC of 416 Hoyt Court, Inman, SC 29349] and the Project (Hampton Inn, 16610 Square Dr. Marysville, Oh 43040).

The Owner and the Contractor agree as set forth below.

ARTICLE I.

**The Contract Documents**

Section 1.01. The Contract Documents, which constitute the entire agreement between the Owner and the Contractor are enumerated as follows:
(i) This Agreement;

Section 1.02. The Contract Documents form the Contract and all are fully a part of the Contract as if attached to this Agreement or repeated herein.

ARTICLE II.

**The Work**

Section 2.01. The Contractor shall perform all the Work set out in addendum A.

ARTICLE III.

**Time of Commencement and Substantial Completion**

The Work to be performed under this Contract shall commence on a mutually agreed upon date after execution of this Contract. Contractor is to make all efforts subject to the limitations in this Contract, to complete the Work as expeditiously as possible. Unnecessary interruption in the Work or failure to supply enough crews to adequately complete the Work with diligence will permit the Owner to have the right to seek any redress available under the terms of this Contract or as are available in law or equity.

The date of commencement of the Work shall be the date on which the date on which the Work actually starts. This Work has to be completed within 90 days from the commencement date. Completion shall be the date on which all Work may cease and all debris shall have been removed from the site by the Contractor, as determined by the Owner or its duly authorized representative. A grace period of 10 business days will be given for completion.


EXHIBIT

A

ARTICLE IV.

**Contract Sum**

Section 4.01. The Owner shall pay the Contractor in current funds for the performance of the Work, subject to additions and deductions by Change Order as provided in the Contract Document, the Contract Sum of $575,000. The Contract Sum includes all applicable sales and use taxes. Owner agrees to execute a Capital Improvement Certificate if requested by Contractor. Payment amount for partial work completed will be based on pro-ration of completed work. A 5% retainage will be withheld from every non-material invoice. This retainage will be paid to contractor after satisfactory completion of Work.

ARTICLE V.

Section 5.01. Based upon Applications for Payment submitted to the Owner by the Contractor , the Owner shall make progress payments on account of the Contract Sum to the Contractor for work done upon completion or partially by room.

Section 5.02. The Contract Sum includes the cost of all labor and materials required for the Work. It is expressly understood by the Contractor that the total cost of the Work to the Owner will in no event exceed the Contract Sum unless Change Orders are agreed upon by the Owner.

Section 5.03. The Owner in executing this Contract has relied upon Contractor's warranty and representations that it is familiar with the patent conditions of the building and the requirements of all public agencies having jurisdiction thereof.

Section 5.04. Payments may be withheld on account of: (i) defective Work not remedied, (ii) claims filed by third parties with respect to work performed under this Contract up to the amount of such claim plus ten percent (10%), (iii) failure of the Contractor to make payments properly to Subcontractors or for labor, materials, or equipment, (iv) reasonable evidence that the Work cannot be completed, (v) reasonable evidence that the Work will not be completed prior to the required completion date unless extended by mutual agreement and that the unpaid balance would not be adequate to cover actual damages for the anticipated delay, or (vi) persistent failure to carry out the Work in accordance with the Contract.

ARTICLE VI.

**Final Payment**

Section 6.01. Final payment, constituting the entire unpaid balance of the Contract Sum including retainage, shall be paid by the Owner to the Contractor within thirty (30) days after the final completion of the Work and after all of the following have occurred:

(a) The Contractor has certified to the Owner in writing that all Work has been completed;

(c) The Contractor has satisfactorily complied with all of the provisions of this Agreement and that no defects have appeared in the Work.

(d) The Contractor delivers to the Owner an affidavit acknowledging payment in full and releasing Owner from any liability.

ARTICLE VII.

Miscellaneous Provisions

Section 7.01. **Definitions.** Unless expressly defined in this Agreement, terms used in this Agreement which are defined in the General Conditions of the Contract shall have the meanings designated in those Conditions.

Section 7.02. **Unexpected Conditions.** Unforeseen or unforeseeable conditions, or conditions not previously observed by the Engineer and/or the Contractor may arise while the Work is in progress. Work in connection with such conditions, as and if discovered, shall be subject to field determination and direction by the Owner; and no Work and/or additional costs are, nor are to be construed as, authorized by Owner except as per written addendum hereto signed by Owner. Field observation by the Owner may result in a determination to limit the Work already specified in which event the Contract Sum shall be equitably reduced.

Section 7.03. **Certificates; Schedule of Work**
(a) The Contractor shall furnish certifications, governmental permits, and material specifications for approval, and all like required submissions within ten (10) days after the date hereof. The Contractor shall also supply a Schedule of Work to which Contractor shall adhere. Such Schedule shall conform to the time limitations set forth in Section 3.01 above. The Owner shall have the option to cancel this Contract if the Schedule of Work is not acceptable to Owner.
(b) The Work shall be undertaken at the Building only between the hours of 8:00 a.m. and 7:00 p.m. The Contractor shall not work on the Building on weekends or holidays without Owner's prior consent. All overtime or other extra charges incurred in connection with the Work during periods other than as specified in the first sentence shall be paid by Contractor.

Section 7.04. **Storage; Scaffolding; Protection**
(a) If Owner provides space within the Building or courtyard(s) for the storage of Contractor's materials and tools, Contractor shall agree that Owner shall have no obligations or liability for theft, damage, or loss. Contractor agrees to perform no Work in such space and to keep such space neat and broom clean and to remove each day all construction debris and garbage.
(b) Contractor shall take all steps necessary to protect workers, the public, and tenants in the Building from personal injury or property damage, including, without limitation, the erection of warning signs and roping off of courtyards and sidewalks affected by the work.
(c) Storage of materials in the Building will be limited to areas designated by the Owner. No rubbish accumulation is permitted. No storage of flammable materials or caustic chemicals is permitted in the Building. Contractor shall leave all roofs, hallways, courtyards, and other portions of the Building free of debris, and these areas shall be broom cleaned at the end of each workday. Damage to roof, hallways, windows, or other surfaces caused by Contractor shall be repaired promptly by the Contractor at [his/her] sole expense as directed by the Owner. Contractor shall replace any glass broken by the Work by the end of each working day.
(d) The Contractor shall leave the Work and the Building clean and in good condition at the end of every work day. Splatters on windows, sills, air-conditioners, and other areas shall be removed at Contractor's expense before the end of the work day, or sooner if directed by the Engineer.

Section 7.08. **Safeguards.** Contractor shall be responsible at all times for safeguarding and securing the Premises against accidents or injury.

Section 7.09. **Permits.** - If required. Contractor shall be solely responsible for obtaining any required permits for the Work to be performed and/or equipment or protection means to be used or erected. Contractor shall keep such permits valid and in force throughout the project period. The costs or charges and fees are included for all such permits as an integral part of the Contract Sum. Unless otherwise directed, Contractor shall neither be responsible for the filing of Building Notices with the Building Department, nor for Certificates of Controlled Inspections required pursuant to such Building Notices.

Section 7.10. **Compliance with Codes.** Notwithstanding anything in the Specifications and/or the Contract or Contract Documents which may be or subsequently become a part hereof, Contractor shall at all times comply with the Building and Construction Code of the City of Marysville and all other codes or regulations having jurisdiction, including without limitation, the Occupational Safety and Health Act, the Environmental Protection Act, and related regulations of the federal government. However, Contractor shall advise Owner of any such conflict between Code requirements and the Specifications or this Contract.

Section 7.11. **Employee Safety.** Building Safety
(a) Contractor agrees that it is responsible and liable for the safety of its employees, agents, subcontractors, and/or their employees or agents, at all times during or in connection with the performance.

Section 7.12. **Owners Agents.**
(a) Contractor acknowledges that there are no agents of Owner who are authorized to act on behalf of owner except the GM of the hotel.

Section 7.13. **Payments Not Acceptance or Waiver.** The payment of any portion of the Contract Sum shall neither be deemed acceptance of the Work or any additional or optional Work or any part thereof nor approval of the manner in which the Work was performed. All payments are made on account of all Work and any additional or optional Work to be performed pursuant to this Contract and are not allocated to specific items of Work or additional Work performed pursuant to this Contract.

Section 7.14. **Right to Terminate Contract on Account of Contractor's Insolvency.** If the Contractor should be adjudged as a bankrupt or if it should make a general assignment for the benefit of creditors, or if a receiver should be appointed on account of its insolvency, then the Owner may, without prejudice to any other right or remedy, terminate this Agreement without further notice and take possession of the premises and all materials, tools, and appliances thereon to finish the work by whatever method the Owner may deem expedient. In such case, the Contractor shall be entitled to receive payment for all Work properly completed to the date of termination, provided, however that such sum shall not be paid until the Work is completed. If the expense of finishing the Work shall exceed the cost had this Agreement not terminated as provided herein, the Contractor shall pay such excess to the Owner.

Section 7.15. **Completion of Punch List Items.** Notwithstanding the final payment provisions recited herein above in this Agreement, if, on or before the tenth (10th) day prior to the date on which such payment shall be due pursuant to said provisions, Owner shall furnish Contractor

with a so-called "punch list," then on the date final payment is due, Owner shall be entitled to withhold the final payment until Contractor shall notify Owner that the punch list items have been completed (but in no event shall Owner be obligated to make such final payment prior to that day if any difference of opinion between Owner and Contractor as to the amount which Owner shall be entitled to withhold, and/or as to whether the punch list items have been completed, the matter(s) shall be resolved by the Engineer). If no resolution is effected within seven (7) days of the occurrence of the difference of opinion, the provisions governing disputes between the parties shall govern.

Section 7.16. **Cleaning Up.** "Contractors obligation as to cleaning up under this paragraph includes removal of paint stains and all smears from all surfaces, cleaning of lighting, plumbing, and other fixtures caused by the Contractor; cleaning all aluminum; and cleaning all resilient floors. Contractor shall be responsible for broken glass caused by Contractors acts.

Section 7.17. **Delays.** Owner's responsibility for delays caused by Owner, where not otherwise excused by events beyond its control (which such "beyond-control" events include labor controversies even though Owner is a party to any such controversy) is limited to granting an extension of time for performance but in no circumstances shall there be exposure to damages. This limitation applies to any other provision of these Conditions in the print thereof dealing with damages for delays or like provisions appearing elsewhere in the Contract Documents.

Section 7.18. **Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the state of Ohio, without reference to any conflicts of law principles thereof.

Section 7.19. **Communication.** All communication will be deemed lawful if sent be email.

ARTICLE VIII.

**Supervision**

Section 8.01. The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences, and procedures and for coordinating all portions of the Work under the Contract.

Section 8.02. The Contractor shall enforce good order among the Contractor's employees and other persons carrying out the Contract.

Section 8.03. The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract.

Section 8.04. The Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations, and lawful orders of any public authority bearing on the safety of persons or property or their protection from damage, injury, or loss.

Section 8.05. The Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting

danger signs and other warnings against hazards, promulgating safety regulations, and notifying owners and users of adjacent utilities.

Section 8.06. The Contractor shall promptly remedy all damage or loss to any property caused in whole or in part by the Contractor, any Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable and for which the Contractor is responsible except damage or loss attributable to the acts or omissions of the Owner or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor.

Section 8.07. The Contractor will make sure that its President will visit the site a minimum of once a week.

Section 8.08. Owner will be responsible for Contractor's lodging, dumpsters, storage containers and boom lift.

ARTICLE IX.

**Warranties**

Section 9.01. All materials and equipment supplied shall be as required by the Specifications and shall be new and of acceptable quality and condition. Unless elsewhere specified herein, the Contractor guaranties all workmanship and materials to be merchantable and free from latent and other defects for the periods described in the General Conditions. If any Work or materials are defective in any respect, Contractor warrants that [he/she] shall, at [his/her] own expense, repair or replace any and all equipment, parts, or structure promptly after notification by the Owner or its representative, but in all events within thirty (30) days of such notice.

Section 9.02. No material, supplies, or equipment for the Work shall be purchased by the Contractor subject to any chattel mortgage or under a conditional sale or other agreement by which an interest therein or in any part thereof is retained by the seller or supplier of such material, supplies, or equipment. The Contractor warrants good title to all materials, supplies, and equipment installed or incorporated in the Work and agrees upon completion of all Work to deliver the premises, together with all improvements and appurtenances constructed or placed thereon by [him/her], to the Owner free from any claims, liens, or charges and further agrees that neither [he/she] nor any person, firm, or corporation furnishing any material or labor for any Work covered by this Contract shall have any right to a lien upon the premises or any improvements or appurtenances thereon.

Section 9.03. The Contractor shall not at any time suffer or permit any lien, attachment, or other encumbrance under the laws of Ohio or otherwise by any person or persons whomsoever to remain on file against any money due or to become due for any Work done or materials furnished under the Contract or by reason of any other claim or demand against the Contractor. Such lien, attachment, or other encumbrance until it is removed shall preclude any payment due from Owner to Contractor and any and all claims or demands for any payment under and by virtue of the Contract up to the amount of such claim, demand or lien plus fifteen percent (15%).

Section 9.04. The Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment, and machinery, and other facilities and services necessary for the proper execution and completion of the Work.

Section 9.05. The roof work will have a warranty of 30 years and the rest of the work is warranted for 10 years.

ARTICLE X.

**Cleaning Up and Repair**

Section 10.01. Contractor shall leave all work areas clean and free of any garbage or debris or materials, whether used or new, upon completion of the Work. During the period while Work is ongoing, Contractor shall remove all debris from all interior parts of the Building on a daily basis. All other debris shall be removed on a regular basis or as per direction of Owner. Removal of debris shall be such as not to be detrimental to tenants or occupants. Emergency exists, doorways, and halls shall not be obstructed at any time. Hazardous or flammable materials shall not be stored or accumulated at any time, except during periods of actual use, and then only if appropriate or required safeguards are employed, including but not limited to the use of appropriate containers, fire extinguishers, and like safety measures, and upon the prior written notice to Owner.

Section 10.02. Owner shall provide appropriate containers for the accumulation of construction debris, and shall cause same to be removed or emptied, all in accordance with all requirements of government bodies having jurisdiction and/or other requirements. Contractor shall obtain all permits and pay all fees incident to the use of such containers and/or arrange for disposal of construction debris, and it shall hold Owner and [his/her] duly authorized representative harmless from and against all proceedings, or fines which may result from the accumulation, storage, and/or disposal of construction debris.

Section 10.03. The Contractor shall at all times keep the premises free from accumulations of waste material or rubbish caused by its employees or work, and at the completion of the work it shall remove all its remaining rubbish from and about the Building and all its tools, scaffolding, and surplus materials, and shall leave the Building "broom clean." In case of dispute, the Owner may remove the rubbish and charge the cost to the Contractor.

Section 10.04. At no time shall any rubbish be thrown from the windows or roof of the Building.

Section 10.05. When directed and before the final inspection, the entire exterior and interior of the Building and the surrounding areas shall be cleared of all rubbish caused by the Contractor including the following:
(a) All construction facilities, debris, and rubbish shall be removed from the Owner's property.
(b) Access spaces shall be left thoroughly clean.
(c) All material shall be new and in an undamaged condition.

Section 10.06. If a dispute arises between the Contractor and separate contractors as to their responsibility for cleaning up, the Owner may clean up and charge the cost thereof to the contractors responsible therefore.

OWNER: Geeta Hospitality Inc.

CONTRACTOR: Dependable Quality Construction, LLC.

By: Amar Pandey, President

By: Valeriy Oleynik, President

16610 Square Dr.
Marysville, OH 43040

416 Hoyt Court
Inman, SC 29349

**ADDENDUM 'A' TO FOLLOW.**

DEPEN-2        OP ID: AK

# ACORD®  CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
**05/14/2018**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER    215-357-7878 | CONTACT NAME: Alina A. Kreymer | | |
|---|---|---|---|
| Remco Insurance Services Inc<br>80 Second Street Pike - Ste #8<br>Southampton, PA 18966<br>Alina A. Kreymer | PHONE (A/C, No, Ext): 215-357-7878 | | FAX (A/C, No): 215-357-6640 |
| | E-MAIL ADDRESS: alina@remcoinsuranceservices.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : AmGuard Insurance Group | | 42390 |
| INSURED   Dependable Quality<br>Construction LLC<br>416 Hoyt Ct<br>Inman, SC 29349 | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES      CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | DEBP990342 | 03/02/2018 | 03/02/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE   X   OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50,000 |
| | | | | | | | | MED EXP (Any one person) | $ 15,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | POLICY   PRO-JECT   LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY   NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| | UMBRELLA LIAB   OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED   RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY    Y / N | | | | | | PER STATUTE   OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

**EXHIBIT B** (tabbies®)

## CERTIFICATE HOLDER      CANCELLATION

| | |
|---|---|
| Geeta Hospitality Inc<br>16610 Square Drive<br>Marysville, OH 43040 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>Alina A. Kreymer |

ACORD 25 (2016/03)

© 1988-2015 ACORD CORPORATION. All rights reserved.<br>The ACORD name and logo are registered marks of ACORD


**Berkshire Hathaway GUARD** Insurance Companies

Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368
570-825-9900 (Toll-Free 800-673-2465)
FAX 570-825-0611
www.guard.com

09/19/2018

# Claim Acknowledgment

This memo confirms our receipt on 09/18/2018 of the following Notice of Loss:

| | |
|---|---|
| **POLICYHOLDER:** | DEPENDABLE QUALITY CONSTRUCTION LLC |
| **CARRIER:** | AmGUARD Insurance Company |
| **POLICY #:** | DEBP990342 |
| **CLAIMANT:** | The Hampton Inn |
| **DATE OF LOSS:** | 09/08/2018 |
| **LOSS LOCATION:** | 16610 Square Dr, Marysville, OH 43040 |
| **TYPE OF LOSS:** | Professional Liability |
| **CLAIM TYPE:** | Liability |
| **CLAIM #:** | DEBP990342-001-001-001 |
| **ADJUSTOR:** | Lisa Stull |
| | Extension: 4691        claims3@guard.com |

Please use the claim number shown above in all correspondence and inquiries. If you receive any notifications from outside parties about damages, be sure to forward them to us immediately.

### For more information, contact our
### Customer Service staff at 800-673-2465.


**EXHIBIT**

*C*

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and subjects such person to criminal and civil penalties

CDN0778872078A0.001855.02.02.000000

 Marysville Hampton Inn     16610 Square Drive, Marysville, OH 43040     tel: **937.642.3777**
fax: 937.642.3778

Lisa Stull
Berkshire Hathaway GUARD
PO Box 1368
Wilkes-Barre, PA 18703

Re:    Policyholder:    Dependable Quality Construction LLC
       Carrier:    AmGUARD Insurance Company
       Policy No:    DEBP990342
       Date of Loss:    September 8, 2018
       Claim No:    DEBP990342-001-001-001

Dear Ms. Stull:

On or about May 17, 2018, we entered into an agreement with your insured, Dependable Quality Construction, LLC., to complete work on our behalf on our building at 16610 Square Drive, Marysville, Ohio 43040 including removal of the existing roof and installation of a new roof.

While working on the project, your insured negligently allowed water to enter the building resulting in significant damages in excess of $500,000 for water mitigation, repair and replacement of damages to the building, replacement of damaged furniture, and loss of income.

Our claim was presented to you and you provided a claim acknowledgement dated September 19, 2018 confirming receipt of the claim on or about September 18, 2018. Subsequent to that, we have responded to your inquiries and provided documentation of our claim. We are unaware of any outstanding requests or requirements at this time.

Lisa, we are extremely confused. We have provided everything you have requested. You have not provided us with any formal challenge or question as to coverage, liability, or damages yet it is now approximately ten (10) months since that acknowledgement and the claim is now not resolved. Please contact the undersigned within the next ten (10) business days to make payment arrangements or we will be forced to contact the Ohio Department of Insurance and potentially pursue legal assistance in the resolution of this claim.

We look forward to your prompt response and assistance in this matter.

Best regards,

Amar Pandey
President
Geeta Hospitality Inc. dba Hampton Inn Marysville
16610 Square Dr., Marysville, OH 43040




EXHIBIT
D

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4 in this box *

Phelan Insurance Agency
ATTN: Kristi
PO Box 1
Versailles, OH 45380

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Lisa Stull
Berkshire Hathaway GUARD
PO Box 1368
Wilkes-Barre, PA. 18703

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
□ Agent
□ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:         □ No

3. Service Type
☒ Certified Mail   □ Express Mail
□ Registered       □ Return Receipt for Merchandise
□ Insured Mail     □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
   (Transfer from service label)    7009 0820 0000 5171 2541

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

 **Berkshire Hathaway GUARD Insurance Companies**

Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368
Toll-Free 800-673-2465
FAX 570-825-0611
www.guard.com

October 7, 2019

The Hampton Inn
16610 Square Dr
Marysville OH  43040

Policyholder:   DEPENDABLE QUALITY CONSTRUCTION LLC
Claimant:       The Hampton Inn
Claim #:        DEBP990342-001-001-001
Date of Loss:   09/08/2018
Claim Type:     Liability

Dear Sir/Madam:

We have concluded our investigation into the above mentioned claim and we have determined that that there is no applicable coverage under our insureds policy for your claimed damages. If there is any information that may be valuable or could compromise our position to this investigation please submit corresponding documentation for our review. Therefore, we must respectfully deny your claim.

I may be reached at 800-673-2465, extension 7820 between the hours of 8:00am and 4:30pm Monday through Friday.  If leaving me a voicemail message, fax or email, please reference your claim number.

Sincerely,

KaSheena Roberts
Liability Claims Representative II
1-800-673-2465 Ext. 7820 claims3@guard.com

**EXHIBIT** _E_

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and subjects such person to criminal and civil penalties.



**Bryon R. Kaster**
Attorney at Law
Admitted in PA

717-731-4800
Fax: 888-811-7144
bkaster@dmclaw.com

September 23, 2019

Dependable Quality Construction, Inc.
416 Hoyt Ct.
Inman , SC  29349

  RE: **Policy No.: DEBP990342**
     **Claimant:  Hospitality Synergy Group, Inc.**
     **Claim No.:  DEBP990342-001-001-001**
     **Our File No.: 0056069.0393229**

Dear Sir / Madam:

   My law firm has been retained by AmGUARD Insurance Company (hereinafter referred to as "AmGUARD") with respect to a potential claim for coverage under the above referenced policy of insurance by Hospitality Synergy Group, Inc.  Please be advised that there is no coverage because AmGUARD is rescinding the policy of insurance based upon materially false statements in the insurance application.

   As you know, AmGUARD issued a policy of insurance, policy number DEBP990342 (hereinafter referred to as "the Policy"), based upon an application that, in part, asked the following questions:

      **Does the prospect do roofing work?**
      **What is the percentage of residential work?**
      **What is the percentage of commercial work?**

   The following answers were given on the application to each of these questions:

      **Does the prospect do roofing work?**   **No**
      **What is the percentage of residential work?** **100%**
      **What is the percentage of commercial work?** **0%**

   These questions were material to the risk covered in the Policy, and AmGUARD relied upon these answers in issuing the Policy.  Section 4 of the Policy Information Page of the Policy describes the business as "Residential Remodelers".  The premiums set forth on the



CALIFORNIA | COLORADO | DELAWARE | MICHIGAN
NEW JERSEY | NEW YORK | NORTH CAROLINA | OHIO
PENNSYLVANIA | SOUTH CAROLINA | WEST VIRGINIA

September 23, 2019
Page 2

Policy Information Page were established based upon the information provided in the application.

The Examinations Under Oath ("EUO") of Valeriy Oleynik and Liliya Oleynik took place on April 26, 2019 in Laurens County, South Carolina. Mr. and Mrs. Oleynik testified that they are the owners of Dependable Quality Construction, Inc., and they testified that they formed the company in 2017. Mr. and Mrs. Oleynik testified that they applied for the Policy through the agency, REMCO INSURANCE SERVICES, INC. ("REMCO") located in Southampton, Pennsylvania. According to the Oleyniks, they provided information to REMCO as part of the application process. During the EUO, Valeriy testified that Dependable Quality Construction, Inc. has only ever done commercial work and has done roofing work, contrary to the answers provided on the application.

Based upon the testimony of the Oleyniks and the materially false statements in the insurance application, please be advised that there is no coverage for the potential claim because AmGUARD is rescinding the policy of insurance. However, if you believe that this decision is in error and you have any additional information that you would like AmGUARD to consider, kindly provide that information at your earliest convenience.

Very truly yours,

Bryon R. Kaster

BRK/mas

cc:     REMCO INSURANCE SERVICES, INC.
        80 Second Street Pike
        Suite 8
        Southampton, PA 18966

        PHELAN INSURANCE AGENCY, INC. / ATTN: Amanda Phelan
        (amanda_phelan@phelanins.com)