## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**GEETA HOSPITALITY INC.,**

        **Plaintiff,**                **Case No. 2:20-cv-5276**

    **vs.**                       **Judge Sarah D. Morrison**

**DEPENDABLE QUALITY**         **Magistrate Judge Elizabeth**
**CONSTRUCTION, LLC, *et al.*,**     **Preston Deavers**

        **Defendants.**

## OPINION AND ORDER

This action arises from a botched renovation project for the Hampton Inn in Marysville, Ohio. Plaintiff Geeta Hospitality Inc. brought suit against five defendants. (ECF No. 2). In response to the Complaint, one of the defendants, Remco Insurance Services Inc., filed a Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 16). Remco's Motion to Dismiss is fully briefed. (ECF Nos. 21, 25). Remco's Motion to Dismiss caused Plaintiff to file an Amended Complaint. (ECF No. 20). In response to the Amended Complaint, Remco filed a Motion to Strike the Amended Complaint. (ECF No. 24). Remco's Motion to Strike is also fully briefed. (ECF Nos. 26, 27). But again, Remco's filing led the Plaintiff to make yet another filing of its own – Plaintiff then filed a Motion for Leave to File an Amended Complaint. (ECF No. 26). Plaintiff's Motion for Leave is also fully briefed. (ECF Nos. 30, 31). To determine the operative pleading, the Court will address the Motion to Strike and the Motion for Leave before turning to the Motion to Dismiss.

## I.    MOTION TO STRIKE

In partial response to Remco's Motion to Dismiss, on December 8, 2020, Plaintiff Geeta Hospitality filed its First Amended Complaint.[1] (ECF No. 20). Remco promptly moved to Strike the First Amended Complaint, arguing that Plaintiff failed to comply with Rule 15 of the Federal Rules of Civil Procedure. (ECF No. 24). In response to the Motion to Strike, Plaintiff effectively concedes that the First Amended Complaint was not timely filed in accordance with Rule 15. (ECF No. 26, PAGEID 393).

The Court has reviewed the briefing and the Amended Complaint. Remco's Motion to Strike is **GRANTED**. The Clerk is directed to strike the First Amended Complaint filed on December 8, 2020. (ECF No. 20).

## II.    MOTION FOR LEAVE

In partial response to Remco's Motion to Strike, Plaintiff also filed a Motion for Leave to File an Amended Complaint. (ECF No. 26). Plaintiff's proposed Second Amended Complaint is different than the First Amended Complaint it filed on December 8, 2020. (*Id*.). According to Plaintiff, the Second Amended Complaint contains additional claims against Defendant Remco and several other defendants for intentional misrepresentation and civil conspiracy. (*Id*., PAGEID 394).

Considering Plaintiff's Motion for Leave requires that the Court apply both Rules 15 and 16 of the Federal Rules of Civil Procedure. Starting with the former,

---

[1]Plaintiff filed two pleadings titled "Amended Complaint." (ECF Nos. 20, 26). For clarity, the Court will refer to the pleadings as the First Amended Complaint (ECF No. 20) and the Second Amended Complaint. (ECF No. 26).

pursuant to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading . . . with the . . . the court's leave. The court should freely give leave when justice so requires." Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted). In deciding a party's motion for leave to amend, the Court of Appeals for the Sixth Circuit has instructed that district courts must consider several elements, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ." *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). In the absence of any of these findings, leave should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). With that said, determination of whether justice requires the amendment is entrusted to the sound discretion of a district court. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (citations omitted).

With regard to Rule 16, "once a scheduling order deadline passes, a party must demonstrate good cause under Federal Rule of Civil Procedure Rule 16(b) for failure to adhere to the deadline." *Winter Enters., LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-cv-360, 2019 U.S. Dist. LEXIS 125841, at *6 (S.D. Ohio July 29, 2019) (Black, J.) (citations omitted); *see also Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (applying Rule 16(b)'s good cause standard to an untimely motion for leave to amend despite otherwise wide latitude for amendments under Rule 15(a)). "The

primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.* 281 F.3d 613 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). Courts also consider possible prejudice to the opposing party. *Id.* (citation omitted).

The case schedule here established December 18, 2020 as the deadline for filing motions to amend. (ECF No. 15). Plaintiff's Motion to Amend was filed nearly a month after that deadline on January 12, 2021. (ECF No. 26). Accordingly, Plaintiff must demonstrate good cause for its failure to file its Motion by the deadline. However, in its Motion and Reply, Plaintiff makes no effort to demonstrate good cause for its delay in filing—it does not even acknowledge that its filing is untimely. Nor does Plaintiff explain why it could not have timely filed its Motion for Leave. Plaintiff's continually moving target of various complaints with various claims is prejudicial to Remco.

Because Plaintiff has not put forth any evidence or argument in support of its diligence in attempting to comply with the case schedule, and because considering the motion would be prejudicial to Remco, Plaintiff has failed to demonstrate good cause for its Motion for Leave. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020) (denying motion for leave to amend when plaintiffs did not even attempt to show the diligence required by Rule 16(b)). Plaintiff's Motion for Leave to Amend the Complaint is **DENIED**.

4

## III.   MOTION TO DISMISS

Now that the Court has determined that Plaintiff has not amended its Complaint, the original Complaint filed on October 8, 2020 (ECF No. 2) is the operative pleading. The Court turns to Remco's Motion to Dismiss (ECF No. 16), which was filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and seeks dismissal of Remco for lack of personal jurisdiction. (*Id.*).

### A. Background

The following allegations, taken from the Complaint, are considered as true. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Plaintiff Geeta Hospitality is the owner and operator of the Hampton Inn Marysville. (ECF No. 2, ¶ 1). The defendants are Remco, Dependable Quality Construction, LLC (hereinafter "Contractor"), Valeriy and Liliya Oleynik (the sole members and owners of the Contractor), and AmGuard Insurance Company.[2] (*Id.*, ¶¶ 2–7). Remco's principal place of business is in Pennsylvania. (*Id.*, ¶ 6). The Contractor's principal place of business is in South Carolina, which is also where the Oleyniks reside. (*Id.*, ¶¶ 3, 4). AmGuard's principal place of business is in Pennsylvania. (*Id.*, ¶ 7).

In May 2018, Plaintiff entered into a Renovation Agreement with Contractor to, among other things, replace the existing metal roof with a new EPDM rubber roof (the "Agreement"). (*Id.*, ¶¶ 8–9). The Agreement required Contractor to be

---

[2]On the joint motion of Plaintiff and Defendant AmGuard Insurance Company, AmGuard was dismissed from this case on April 12, 2021. (ECF Nos. 33, 34).

"responsible at all times for safeguarding and securing the Premises against accidents or injury" and, as a precondition, the Contractor was required to obtain a commercial general liability ("CGL") policy naming Plaintiff as an additional insured or a certificate holder. (*Id.*, ¶¶ 10, 11).

Remco assisted the Oleyniks and Contractor in obtaining the CGL Policy from AmGuard Insurance Company and, as an agent for AmGuard, it prepared and issued the Certificate of Liability Insurance. (*Id.*, ¶¶ 7, 13). Pursuant to the Agreement, Contractor provided Plaintiff with a Certificate of Liability Insurance identifying Plaintiff as a Certificate Holder or additional insured under the Contractor's CGL policy. (*Id.*, ¶ 12). Plaintiff states that it would not have entered into the Agreement but for the Certificate of Liability identifying it as a "Certificate Holder" under the CGL policy. (*Id.*, ¶ 14).

Construction began in September of 2018. (*Id.*, ¶ 15). Unfortunately, soon after the existing roof was removed, a rainstorm occurred. (*Id.*, ¶ 16). Contractor failed to cover and protect the building from the storm, resulting in "significant water intrusion damage to the interior of the hotel, including but not limited to damage to the ceilings, walls, carpet, furniture and other interior finishes." (*Id.*). Plaintiff paid over $500,000 to remediate the resulting water damage, to repair the building, and to replace damaged interior furniture and finishes. (*Id.*, ¶ 17). Plaintiff submitted a Notice of Claim/Proof of Loss to AmGuard for the damage; AmGuard denied the claim. (*Id.*, ¶¶ 18, 22).

Plaintiff brought the following claims: (1) breach of contract against Contractor; (2) fraud against Contractor and the Oleyniks; (3) breach of contract against AmGuard; (4) bad faith by AmGuard; (5) professional negligence against Remco; (6) negligent misrepresentation against Remco; and, (7) declaratory judgment against all defendants.

## B. Standard of Review

Plaintiff has the burden of proving personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*. (citation omitted). If the Court rules on a Federal Rule of Civil Procedure 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citing *Serras v. First Tenn. Bank Nat'l Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx. 425, 434 (6th Cir. 2006) (citation omitted). Here, neither side has requested further discovery or an evidentiary hearing, and the Court concludes that neither is necessary in order to rule on Remco's Motion.

7

When a court resolves a Rule 12(b)(2) motion based on "written submissions and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) and *Theunissen*, 935 F.2d at 1458). Similarly, in the absence of an evidentiary hearing, a court will generally apply a *prima facie* standard weighing the evidence in the light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). "[A] court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal . . . because we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (internal quotations and emphasis omitted) (quoting *Theunissen*, 935 F.2d at 1459). But the Court may consider a defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 153 (6th Cir. 1997)). Moreover, where "there does not appear to be any real dispute over the facts relating to jurisdiction, the prima facie proposition loses some of its significance." *Id.* (internal quotations omitted) (quoting *Int'l Techs. Consultants, Inc. v. Euroglas S.A.,* 107 F.3d 386, 391 (6th Cir. 1997)).

In a diversity case, "[t]o determine whether personal jurisdiction exists over a defendant, Federal Courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe Inc.*, 89 F.3d at 1262. There are two categories of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. *See First Franchise Capital Corp. v. Jack in the Box Inc.*, No. 1:17-cv-397, 2017 WL 3269260, at *16 (S.D. Ohio Aug. 1, 2017) (Litkovitz, J.) (citing *Daimler AG v. Bauman, U.S.*, 571 U.S. 117, 118, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)). "Ohio law does not recognize general jurisdiction over a non-resident defendant." *JM-Nipponkoa Ins. Co. v. Dove Transp. LLC,* No. 1:14-cv-202, 2015 WL 145041, at *3 (S.D. Ohio Jan. 12, 2015) (Beckwith, J.) (citation omitted). Thus, Defendants must be amenable to suit through specific jurisdiction under Ohio's long-arm statute. *Id.*

The Court must also examine the Due Process Clause, "recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." *Theunissen*, 935 F.2d at 1459. "[T]he crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state such that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *CompuServe Inc.*, 89 F.3d at 1263 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Courts employ three criteria to make this determination:

9

> (1) [T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;
>
> (2) [T]he cause of action must arise from the defendant's activities there; and
>
> (3) [T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972)

(quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

### C. Analysis

Plaintiff argues that the basis for personal jurisdiction in this case is the provision of Ohio's long-arm statute that provides that a court may exercise jurisdiction over a defendant when the defendant "[c]aus[es] tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." (ECF No. 21, p. 9, citing O.R.C. § 2307.382(A)(6)).

To satisfy (A)(6), courts have generally required the tortious act to be directed at a person in Ohio. For example, "district courts have found that fraudulent communications or misrepresentations directed at Ohio residents satisfy § 2307.382(A)(6)'s requirements." *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012) (citation omitted). Similarly, in *Concentrix CVG Corp. v. Daoust*, No. 1:21-cv-131, 2021 U.S. Dist. LEXIS 55255, at *10 (S.D. Ohio Mar. 24, 2021) (Black, J.), the court found (A)(6) satisfied when a Texas company hired a Florida resident subject to a Non-Compete Agreement with an Ohio company. *Id.* The Court reasoned that,

10

by hiring the employee, the Texas-based company "could have reasonably expected . . . [to] injure Concentrix in Ohio." *Id.*; *see also Corp. Bertec v. Sparta Software Corp.*, No. 2:19-CV-04623, 2020 U.S. Dist. LEXIS 78437, at *12 (S.D. Ohio May 4, 2020) (Marbley, J.). Ohio's long-arm statute does not apply when the defendant "could not have anticipated that Plaintiff would be injured in Ohio." *Grigor v. Starmark Hosp. Grp. LLC*, No. 2:10-cv-20, 2010 U.S. Dist. LEXIS 57385, at *16 (S.D. Ohio June 10, 2010) (Frost, J.).

Here, Geeta Hospitality alleges that "Remco . . . prepared and issued the Certificate of Liability Insurance which named Geeta Hospitality, a commercial entity, as a 'Certificate Holder' on the AmGuard policy." (ECF No. 2, ¶ 13). Plaintiff further alleges that Remco assisted the Oleyniks in securing a CGL Policy from AmGuard and claims that false and misleading information was provided to AmGuard as part of that process. (*Id.*, ¶¶ 60–64). Remco then provided a Certificate of Liability Insurance, which Certificate "made Plaintiff a 'Certificate Holder' or additional insured under the policy." (*Id.*, ¶ 64). Plaintiff then goes on to allege that:

> 68. Remco was negligent and breached its standard of care by providing a Certificate of Liability Insurance purporting to make Plaintiff a certificate holder under the policy issued by AmGuard.

> 69. Remco knew or should have known that the Oleyniks obtained the CGL Policy by providing false and misleading statements on the application they submitted to AmGuard.

> 70. Remco knew or should have known that Plaintiff would detrimentally rely upon the Certificate of Liability Insurance in its decision to contract with Contractor and allow it to perform commercial roofing work during The Project.

11

(ECF No. 2).

Geeta Hospitality does not allege that it had any direct communications or relationship with Remco; the affidavits provided by Remco assert that there were no such communications or relationship. (ECF Nos. 16-1, 16-2). Geeta Hospitality also does not explain how Remco directed tortious acts at Plaintiff. The claims against Remco are for "professional negligence" and "negligent misrepresentation." (ECF No. 2, PAGEID 82–85). As to the former, Plaintiff has not alleged how a duty to it in Ohio was created on the part of Remco. And for the latter, if there were no direct communications between Geeta Hospitality and Remco, then there can be no misrepresentations directed towards Plaintiff in Ohio.

Still, Plaintiff argues that this Court has personal jurisdiction over Remco because it intentionally mispresented to AmGuard that the Contractor performs residential (rather than commercial) work, and this led to Geeta Hospitality becoming a "Certificate Holder" on the Contractor's policy. (ECF No. 21, PAGEID 272). This is insufficient for a *prima facie* case for jurisdiction because, even assuming that Remco engaged in such tortious activity, there is no allegation as to how Geeta Hospitality could have relied upon a misrepresentation to AmGuard. Nor has Plaintiff alleged facts sufficient to show how Remco "might reasonably have expected" that Geeta Hospitality would rely on the Certificate of Liability Insurance to show that it was added to the Contractor's insurance policy. O.R.C. § 2307.382(A)(6).

Generally, a certificate of liability insurance does no more than certify that insurance existed on the day that it was issued; many certificates contain disclaimers that expressly explain that no rights are created. *See, e.g., Certain Underwriters at Lloyd's of London v. NFC Mining, Inc.*, 427 F. App'x 404, 405 (6th Cir. 2011) ("NFC could not reasonably think that a certificate of liability insurance, as opposed to the insurance contract itself, would confer coverage for coal dust damages."); *Lu-An-Do, Inc. v. Kloots*, 131 Ohio App.3d 71, 77, 721 N.E.2d 507 (5th Dist.1999) ("Because of this [disclaimer], neither of the appellees could have foreseen that the appellant would rely on the Certificate of Insurance for information on the extent of coverage on the appellant's property interest."); *see also Dan Ryan Builders W. Virginia, LLC v. Main St. Am. Assur. Co.*, 452 F. Supp. 3d 338, 354 (D.S.C. 2020) ("The court finds that these conspicuous disclaimers preclude a finding of estoppel because they render DRB's reliance upon the certificates of insurance unreasonable."); *Wendy's of Bowling Green, Inc. v. Marsh USA, Inc.*, No. 3-10-1043, 2011 U.S. Dist. LEXIS 40954, at *5 (M.D. Tenn. Apr. 13, 2011) (noting difference between being a certificate holder and an additional insured).

Plaintiff provided the Certificate of Liability Insurance,[3] and it does identify Geeta Hospitality as a Certificate Holder at a business address in Ohio. But the Certificate also provides the following disclaimer:

---

[3]The wrong Certificate of Insurance was mistakenly attached to Plaintiff's original complaint. (ECF No. 21, fn. 1). The correct Certificate of Insurance, which was issued by Remco on May 14, 2018, was attached as Exhibit B to the Amended Complaint. (ECF No. 20). For purposes of this Motion, the Court considered the correct Certificate that was attached to the Amended Complaint.

13

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:** If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

(ECF No. 20, Ex. B, PAGEID 257) (emphasis in original). The only "insured" identified on the face of the Certificate is "Dependable Quality Construction LLC"—the Contractor—in Inman, South Carolina. (*Id.*). Accordingly, the only document that Plaintiff provides in support of its allegations shows that it does not have any rights other than as a "certificate holder" and that document directly contravenes its claims that Remco made it an insured. (*See* ECF No. 2, ¶ 64).

When construing the allegation that Remco provided a Certificate of Liability Insurance that made Plaintiff a Certificate Holder in the light most favorable to Plaintiff, the Court is not required to ignore the document on which Plaintiff says it relied. And that document makes clear on its face that it conferred no rights upon Plaintiff. As such, it cannot be said that Remco might reasonably have expected that Plaintiff would rely on that Certificate of Liability

14

Insurance to hire the Contractor, and that Plaintiff would be tortiously injured in Ohio as a result.

Plaintiff has failed to make even a *prima facie* case for the exercise of jurisdiction over Remco under Ohio's long-arm statute. Because the Court concludes that it lacks personal jurisdiction under Ohio's long-arm statute, it does not need to determine whether the exercise of jurisdiction would comport with Due Process.

## IV.     CONCLUSION

For the reasons set forth above, Defendant Remco's Motion to Strike (ECF No. 24) is **GRANTED.** Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 26) is **DENIED**. Defendant Remco's Motion to Dismiss (ECF No. 16) is **GRANTED**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**